18 Civ.12299 (ER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CALVIN BUARI,

Plaintiff,

-against-

THE CITY OF NEW YORK, New York City Police
Department Detectives ANDREW DIETZ, FNU
TRACY, VINCENT PRICE, EUGENE GOTTWIN,
JOSEPH NEENAN, CHRISTINE FORTUNE; Bronx
County District Attorney's Office Investigators JOHN
WALL, FNU SCHIFFMAN, FRANK VIGGIANO;
Bronx County District Attorney's Office Assistant
District Attorneys ALLEN KAREN, FELICITY LUNG,
PETER CODDINGTON, GINA MIGNOLA; and "JOHN
and/or JANE DOES" #1-10 who are currently unknown
members of the New York City Police Department; and
"RICHARD and/or RACHEL ROES #1-10" who are
currently unknown members of the Bronx County District
Attorney's Office, all of whom are being sued in their
individual capacities,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: Alan H. Scheiner*
*Frank A. DeLuccia*
*Tel:  (212) 356-2344/5054*
*Matter No.:  2017-060931*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 1

STANDARD OF REVIEW ......................................................................................... 8

ARGUMENT

    POINT I

        BCDAO DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY ........................................................................ 9

        A.   The ADA Defendants Are Entitled to Absolute Immunity ............................................................................. 9

        B.   The BCDAO Investigators Are Entitled to Absolute Immunity .......................................................................... 12

    POINT II

        PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW .............................................. 13

        A.   Plaintiff Cannot Rebut the Presumption of Probable Cause Created by the Grand Jury Indictment .................................................................. 13

        B.   Plaintiff Cannot Demonstrate a Favorable Termination .................................................................... 15

        C.   Defendants Did Not Initiate or Continue the Prosecution ..................................................................... 16

    POINT III

        PLAINTIFF'S DENIAL OF RIGHT TO FAIR TRIAL CLAIM BASED ON FABRICATED EVIDENCE FAILS ..................................................................... 17

        A.   Plaintiff Fails to Sufficiently Allege Knowledge of Fabricated Information ............................. 17

**Page**

    B.   Plaintiff Cannot Demonstrate the Required Favorable Termination ........................................19

    C.   Plaintiff Relies on Group Pleading and Fails to Sufficiently Allege the Personal Involvement of all Defendants or Failure to Intervene............................................19

POINT IV

    PLAINTIFF'S CONSPIRACY CLAIM FAILS.......................................21

POINT V

    PLAINTIFF'S MUNICIPAL LIABILITY CLAIM FAILS .........................................................................22

    A.   Plaintiff Failed to Establish an Underlying Constitutional Violation .........................................23

    B.   Plaintiff Fails to Sufficiently Allege an Official Policy or Practice.........................................24

    C.   Plaintiff Fails to Sufficiently Allege a Failure to Train .........................................25

POINT VI

    THE NYPD DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY .........................................26

POINT VII

    PLAINTIFF'S REMAINING STATE LAW CLAIMS FAIL AS A MATTER OF LAW ............................27

CONCLUSION.........................................................................28

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*Aguirre v. City of New York*,
   2017 U.S. Dist. LEXIS 155422 (E.D.N.Y. Sept. 22, 2017).....................................................24

*Allen v. City of New York*,
   12-CV-496 (KAM) (LB), 2014 U.S. Dist. LEXIS 120347
   (E.D.N.Y. Aug. 27, 2014).....................................................................................................10

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016).....................................................................................................8

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
   464 F.3d 338 (2d Cir. 2006).....................................................................................................9

*Anthony v. City of New York*,
   339 F.3d 129 (2d Cir. 2003)...................................................................................................26

*Arteaga v. State*,
   72 N.Y.2d 212 (1988)..............................................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................................8

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ...............................................................................................19

*Batista v. City of New York*,
   No. 05 Civ. 844 (KMK), 2007 U.S. Dist. LEXIS 71905
   (S.D.N.Y. Sept. 24, 2007)......................................................................................................28

*Batista v. Rodriguez*,
   702 F.2d 393 (2d. Cir. 1983)..................................................................................................26

*Bd. of Cty. Comm'rs v. Brown*,
   520 U.S. 397 (1997)........................................................................................................23, 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................8

*Bernard v. Cty. of Suffolk*,
   356 F.3d 495 (2d Cir. 2004)...................................................................................................13

*Bernard v. United States*,
   25 F.3d 98 (2d Cir. 1994).......................................................................................................28

**Cases**                                                                                                   **Pages**

*Bertuglia v. Schaffler*,
    672 F. App'x 96 (2d Cir. 2016) ..........................................................................21

*Blue v. City of New York*,
    2018 U.S. Dist. LEXIS 93509 (S.D.N.Y. June 4, 2018)......................................21

*Boddie v. City of New York*,
    2016 U.S. Dist. LEXIS 50248 (S.D.N.Y. Apr. 13, 2016).................................25, 26

*Bond v. City of New York*,
    2015 U.S. Dist. LEXIS 130922 (E.D.N.Y. Sep. 28, 2015)....................................14

*Boose v. City of Rochester*,
    421 N.Y.S.2d 740 (4th Dep't 1979)....................................................................28

*Bouche v. City of Mount Vernon*,
    2012 U.S. Dist. LEXIS 40246 (S.D.N.Y. Mar. 23, 2012) ...................................19

*Breton v. City of New York*,
    No. 17-CV-9247 (JGK), 2019 U.S. Dist. LEXIS 150407
    (S.D.N.Y. Sept. 3, 2019)......................................................................................19

*Brown v. City of New York*,
    16-CV-1919 (ALC), 2018 U.S. Dist. LEXIS 135478
    (S.D.N.Y. Aug. 10, 2018)....................................................................................18

*Brown v. City of New York*,
    14 Civ. 2668 (PAE), 2014 U.S. Dist. LEXIS 150577 (S.D.N.Y. Oct. 23, 2014) ....................9

*Buari v. Kirkpatrick*,
    753 F. Supp. 2d 282 (S.D.N.Y. 2010)....................................................................7

*Buckley v. Fitzsimmons*,
    509 U.S. 259 (1993)............................................................................................10

*Burns v. Reed*,
    500 U.S. 478 (1991)............................................................................................10

*Cantalino v. Danner*,
    96 N.Y.2d 391 (2001).........................................................................................15

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986)............................................................................................23

*Cleavinger v. Saxner*,
    474 U.S. 193 (1985)............................................................................................12

**Cases**                                                                                          **Pages**

*Collins v. City of New York*,
    923 F. Supp. 2d 462 (E.D.N.Y. 2013) ...................................................................................11

*Colon v. City of New York*,
    60 N.Y.2d 78 (1983) ...........................................................................................................13

*Connick v. Thompson*,
    131 S. Ct. 1350 (2011) .............................................................................................22, 25, 26

*Cooper v. Masiello*,
    2000 U.S. Dist. LEXIS 5146 (W.D.N.Y. Apr. 13, 2000) ......................................................10

*D'Alessandro v. City of New York*,
    713 F. App'x 1 (2d Cir. 2017) ..............................................................................................10

*D'Olimpio v. Crisafi*,
    718 F. Supp. 2d 357 (S.D.N.Y. 2010) ..............................................................................15, 16

*Debrosse v. City of New York*,
    739 F. App'x 48 (2d Cir. 2018) .............................................................................................17

*Delrosario v. City of New York*,
    2010 U.S. Dist. LEXIS 20923, 2010 WL 882990 (S.D.N.Y. Mar. 4, 2010) ..........................25

*DiPippo v. Cty. of Putnam*,
    2019 U.S. Dist. LEXIS 33071 (S.D.N.Y. Feb. 28, 2019) ......................................................19

*Dory v. Ryan*,
    25 F.3d 81 (2d Cir. 1994) ......................................................................................................10

*Dwares v. City of New York*,
    985 F.2d 94 (2d Cir. 1993) .....................................................................................................22

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) .......................................................................................................8

*Feinberg v. City of New York*,
    99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098 (S.D.N.Y. Aug. 13, 2004) .............................20

*Friedman v. Rice*,
    5 N.Y.S.3d 816 (Sup. Ct. 2015) .............................................................................................11

*Garnett v. Undercover Officer 0039*,
    838 F.3d 265 (2d Cir. 2016) .............................................................................................17, 18

**Cases**                                                                                    **Pages**

*Gil v. County of Suffolk,*
    590 F. Supp. 2d 360 (E.D.N.Y. 2008) ..................................................................27

*Giraldo v. Kessler,*
    694 F.3d 161 (2d Cir. 2012)...........................................................................11

*Gordon v. Emmanuel,*
    2018 U.S. Dist. LEXIS 169315 (E.D.N.Y. Sep. 28, 2018)....................................21

*Hadid v. City of New York,*
    730 F. App'x 68 (2d Cir. 2018) ...................................................................14

*Hamilton v. City of New York,*
    2019 U.S. Dist. LEXIS 56606 (E.D.N.Y. Mar. 18, 2019) ................................. 12-13

*Harris v. County of Nassau,*
    581 F. Supp. 2d 351 (E.D.N.Y. 2008) ..................................................................27

*Heck v. Humphrey,*
    512 U.S. 477 (1994)...................................................................................19

*Hicks v. Marchman,*
    719 F. App'x 61 (2d Cir. 2018) ...................................................................19

*Hill v. City of New York,*
    45 F.3d 653 (2d Cir. 1995)...........................................................................12, 13

*Hollins v. City of N.Y.,*
    No. 10 Civ. 1650, 2014 U.S. Dist. LEXIS 183076
    (S.D.N.Y. Mar. 3, 2014) ..............................................................................28

*Holmes v. Allstate Corp.,*
    11 Civ. 1543 (LTS) (DF), 2012 U.S. Dist. LEXIS 24883
    (S.D.N.Y. Jan. 27, 2012).............................................................................19

*Houck v. US Bank NA,*
    2016 U.S. Dist. LEXIS 136033 (S.D.N.Y. Sep. 30, 2016)..................................1, 5

*Hygh v. Jacobs,*
    961 F.2d 359 (2d Cir. 1992)...........................................................................16

*Imbler v. Pachtman,*
    424 U.S. 409 (1976)...................................................................................10, 11

**Cases**                                                     **Pages**

*Isaacs v. City of New York,*
No. 16 Civ. 4729 (KAM), 2018 U.S. Dist. LEXIS 132995 .................................... 24

*Jackson v. City of New York,*
29 F. Supp. 3d 161 (E.D.N.Y. 2014) .................................. 27

*Jackson v. Seewald,*
2013 U.S. Dist. LEXIS 7733 (S.D.N.Y. Jan. 14, 2013) ........................................ 13

*Jean-Laurent v. Wilkinson,*
540 F. Supp. 2d 501 (S.D.N.Y. 2008) .................................. 20

*Jones v. Westchester Cty.,*
182 F. Supp. 3d 134 (S.D.N.Y. 2016) .................................. 23

*K.D. v. White Plains Sch. Dist.,*
921 F. Supp.2d 197 (S.D.N.Y. Feb. 4, 2013) .................................. 12

*Kentucky v. Graham,*
473 U.S. 159 (1985) .................................. 23

*King v. City of N.Y.,*
No. 12-CV-2344 (NGG) (RER), 2014 U.S. Dist. LEXIS 140790
(E.D.N.Y. Sep. 30, 2014) .................................. 16

*L-7 Designs, Inc. v. Old Navy, LLC,*
647 F.3d 419 (2d Cir. 2011) .................................. 9

*Lanning v. City of Glen Falls,*
908 F.3d 19 (2d Cir. 2018) .................................. 16

*Lewis v. City of New York,*
591 F. App'x 21 (2d Cir. 2015) .................................. 17

*Little v. City of New York,*
487 F. Supp. 2d 426 (S.D.N.Y. 2007) .................................. 21

*Lloyd v. City of New York,*
246 F. Supp. 3d 704 (S.D.N.Y. 2017) .................................. 27

*Longo v. Ortiz,*
15-CV-7716 (VEC), 2016 U.S. Dist. LEXIS 131558
(S.D.N.Y. Sep. 26, 2016) .................................. 17

*McDonough v. Smith,*
139 S. Ct. 2149 (2019) .................................. 19

**Cases**                                                                                          **Pages**

*McKenzie v. City of New York*,
    No. 17-CV-4899 (PAE), 2019 U.S. Dist. LEXIS 121937
    (S.D.N.Y. July 22, 2019) ...................................................................................................19

*Missel v. County of Monroe*,
    351 Fed. Appx. 543 (2d Cir. 2009).....................................................................................24

*Mitchell v. City of New York*,
    841 F.3d 72 (2d Cir. 2016)..................................................................................................13

*Monell v. Dep't of Soc. Serv.*,
    436 U.S. 658 (1978)......................................................................................................22, 23

*Myers v. Cty. of Nassau*,
    825 F. Supp. 2d 359 (E.D.N.Y. 2011) ...............................................................................18

*Nelson v. City of Stamford*,
    2012 U.S. Dist. LEXIS 8907 (D. Conn. Jan. 25, 2012)......................................................25

*O'Neill v. Krzeminski*,
    839 F.2d 9 (2d Cir. 1988)...................................................................................................20

*O'Neill v. Town of Babylon*,
    986 F.2d 646 (2d Cir. 1993)...............................................................................................26

*Oklahoma v. Tuttle*,
    471 U.S. 808 (1985)...........................................................................................................22

*Paycom Billing Servs. v. Mastercard Intl, Inc.*,
    467 F.3d 283 (2d Cir. 2006)..................................................................................................9

*People v. Buari*,
    2006 NY Slip Op 50597(U), ¶¶ 20-21, 11 Misc. 3d 1077(A),
    1077A, 819 N.Y.S.2d 850, 850, 2006 N.Y. Misc. LEXIS 769
    (Sup. Ct. Bronx Cty. April 10, 2006),
    *aff'd People v. Buari*,
    50 A.D.3d 483, 484-85 (App. Div. 1st Dept. 2008) ...................................................5, 6, 7, 15

*People v. Buari*
    (N.Y. Sup. Ct. Nov. 9, 2017) ...........................................................................................1, 7

*Peterson v. City of New York*,
    11 Civ. 3141 (DLC), 2012 U.S. Dist. LEXIS 2658 (S.D.N.Y. Jan. 9, 2012) ...........................9

*Plair v. City of New York*,
    789 F. Supp. 2d 459 (S.D.N.Y. 2011)................................................................................23

**Cases**                                                                                   **Pages**

*Polk Cty. v. Dodson*,
    454 U.S. 312 (1981) ................................................................................................23

*Rasmussen v. City of New York*,
    766 F. Supp. 2d 399 (E.D.N.Y. 2011) ................................................................25

*Reynolds v. Guiliani*,
    586 F.3d 183 (2d. Cir. 2007) ..............................................................................26

*Riccuiti v. New York City Transit Auth.*,
    941 F.2d 123 (2d Cir. 1997) ................................................................................26

*Roberts v. Babkiewicz*,
    582 F.3d 418 (2d Cir. 2009) ..................................................................................9

*Romero v. City of New York*,
    839 F. Supp. 2d 588 (E.D.N.Y. 2012) ................................................................27

*Roper v. Hynes*,
    05 Civ. 7664 (WHP), 2006 U.S. Dist. LEXIS 69128
    (S.D.N.Y. Sep. 27, 2006) ................................................................................9-10

*Sanabria v. Tezlof*,
    11-CV-6578 (NSR), 2016 U.S. Dist. LEXIS 107104
    (S.D.N.Y. Aug. 12, 2016) ....................................................................................20

*Saucier v. Katz*,
    533 U.S. 194 (2001) ............................................................................................20

*Savino v. City of New York*,
    331 F.3d 63 (2d Cir. 2003) ............................................................................13, 14

*Sedunova v. City of New York*,
    652 F. App'x 29 (2d Cir. 2016) ..........................................................................18

*Shmueli v. City of New York*,
    424 F.3d 231 (2d Cir. 2005) ................................................................................10

*Siegert v. Gilley*,
    500 U.S. 226 (1991) ..............................................................................................9

*Simmons v. New York City Police Dep't*,
    97 F. App'x 341 (2d Cir. 2004) ..........................................................................14

**Cases**                                                                             **Pages**

*Singer v. Fulton Cty. Sheriff*,
   63 F.3d 110 (2d Cir. 1995)...................................................................................21

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004)...................................................................................9

*Styles v. Goord*,
   431 F. App'x 31 (2d. Cir. 2011) ...........................................................................12

*Tchatat v. City of New York*,
   2015 U.S. Dist. LEXIS 142483 (S.D.N.Y. Oct. 20, 2015) ....................................25

*Thomas v. City of New York*,
   11 Civ. 2219 (LAP), 2013 U.S. Dist. LEXIS 47687 (S.D.N.Y. 2013),
   *aff'd*, 2014 U.S. App. LEXIS 6939 (2d Cir. Apr. 15, 2014)................................27

*Townes v. City of N.Y.*,
   176 F.3d 138 (2d Cir. 1999)................................................................................17

*Ulerio v. City of New York*,
   18 Civ. 2155 (GBD), 2018 U.S. Dist. LEXIS 215166
   (S.D.N.Y. Dec. 20, 2018).....................................................................................20

*United States v. Ruggles*,
   70 F.3d 262 (2d Cir. 1995)..................................................................................18

*Vasquez v. City of New York*,
   99 Civ. 4606 (DC), 2000 U.S. Dist. LEXIS 8887 ...............................................9

*Vippolis v. Village of Haverstraw*,
   768 F.2d 40 (2d Cir. 1985),
   *cert. denied*, 480 U.S. 916 (1987) ......................................................................22

*Vogelfang v. Capra*,
   No. 19 Civ. 3827 (PAE), 889 F. Supp. 2d 489 (S.D.N.Y. Mar. 13, 2012) ............12

*Warney v. Monroe Cty.*,
   587 F.3d 113 (2d Cir. 2009)................................................................................11

*Ying Li v. City of New York*,
   246 F. Supp. 3d 578 (E.D.N.Y. 2017) .................................................................23

*Zahra v. Town of Southold*,
   48 F.3d 674 (2d Cir. 1995)..................................................................................22

**<u>Statutes</u>**                                                                                           **<u>Pages</u>**

42 U.S.C. § 1983.......................................................................1, 9, 12, 13, 16, 19, 21, 22, 23, 28

CLP § 440 ..............................................................................................5, 6, 7, 11, 16

CPL § 440.10 ..........................................................................................5, 6, 7, 14-15, 16

Fed. R. Civ. P. 8 ...............................................................................................................8

Fed. R. Civ. P. 8(a) .........................................................................................................19

Fed. R. Civ. P. 8(a)(2).......................................................................................................8

## PRELIMINARY STATEMENT

Defendants respectfully submit this memorandum of law in support of their motion to dismiss plaintiff's complaint with prejudice.[1]  For the reasons set forth below, plaintiff's Amended Complaint, filed November 11, 2019 (ECF Doc. No. 58) (the "AC") should be dismissed in its entirety.  In short, plaintiff's complaint is deficient because it lacks factual allegations key to its main claims of malicious prosecution and fabrication of evidence: namely, plaintiff alleges no facts supporting a plausible inference that defendants knew at any stage that plaintiff was actually innocent, and that the testimony by several witnesses against him was false. In addition, plaintiff's claim fails, among other reasons, because of absolute immunity, the presumption of probable cause from a grand jury indictment, and qualified immunity.  For these reasons and those stated herein, the AC should be dismissed with prejudice in its entirety.

## STATEMENT OF FACTS[2]

On September 10, 1992, Salhaddin and Elijah Harris were shot and killed while sitting in a BMW near the intersection of 213th Street and Bronxwood Avenue in the Bronx.  (*See* AC, ¶5[3]) At the time of the shooting, plaintiff was a known drug dealer and lived on 211th Street between Bronxwood and Paulding Avenues.  (¶¶37, 75); Indictment No. 2111-1993 in *People v. Buari*, (N.Y. Sup. Ct. March 26, 1993) (the "Indictment"), annexed as Exhibit B to Scheiner Decl.)[4]  At

---

[1] Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and New York State law against The City of New York, New York City Police Department Detectives Dietz, Godwin [sued as Gottwin], Neenan, and Fortune ("NYPD Defendants"); Assistant District Attorneys of the Bronx County District Attorney's Office ("BCDAO") Karen, Lung, Coddington, and Mignola ("ADA Defendants"), and BCDAO investigators Wall, Schiffman, and Viggiano ("Investigators") (collectively with the ADA Defendants, the "BCDAO Defendants").  The remaining individuals named as defendants in the caption are deceased and were not served.

[2] The facts alleged in the AC are accepted as true herein solely for the purposes of this motion.

[3] For brevity, the AC is cited to herein by the "¶" sign followed by the relevant paragraph number.

[4] The Declaration of Alan H. Scheiner submitted herewith is referred to as "Scheiner Decl."  The Court may consider the Indictment as it was incorporated in the AC by reference at ¶85 and other paragraphs.  The Court may also take judicial notice of the Indictment.  *See Houck v. US Bank NA*, 2016 U.S. Dist. LEXIS 136033, at *11 (S.D.N.Y. Sep. 30, 2016) ("courts [may] take judicial notice of state court documents . . . on a motion to dismiss").

the time of the shooting, plaintiff was in the vicinity of 213th Street with a friend named John Parris and "immediately ran down 213th Street towards Paulding Avenue." (¶¶38-46, 48)

**Initial Investigation.** NYPD detectives identified a witness who told them that he had observed two men running on 213th Street away from the shooting after shots were fired. (¶58) That witness later identified Kintu Effort as one of the individuals. (*Id.*)

On January 29, 1993, detectives arrested Alrick Griffiths for possession of narcotics and a handgun. (¶63) Griffiths was a drug dealer who sold narcotics on the corner of 213th Street and Bronxwood Avenue. (¶¶8, 64) Detective Deitz and unnamed others "used impermissible suggestion and/or pressure and/or coercion to induce Griffiths to implicate someone else for that crime." (¶67) Plaintiff's only factual basis for this allegation is his claim that the police "spread a false rumor" that Griffiths was a "snitch" and "had talked to the police." (¶¶67-68) This allegation lacks any specificity, is devoid of how or when or where this alleged rumor was spread, and provides no explanation as to why such a rumor would induce Griffiths to falsely implicate plaintiff. Plaintiff does not allege that the detectives sought to implicate him. Rather, plaintiff claims that, as the sole result of the "false rumor," Griffiths' girlfriend, Elaine Salmon, went to the 47th Precinct on February 27, 1993 and told Det. Dietz that Griffiths had told her that he was present on 213th Street and Bronxwood Avenue when one of the 'Yankee guys that deal crack shoot two guys in the head who were sitting in a pretty white BMW.'" (¶69) Plaintiff further alleges: "[u]pon information and belief, Det. Deitz knew that Mr. Robinson (who later became a witness against plaintiff) was a 'Yankee guy' who dealt crack at 213th Street and Bronxwood Avenue." (¶70) Plaintiff does not allege how the police purportedly knew that fact, or that they knew that plaintiff was not a "Yankee guy."

On March 22, 1993, plaintiff was arrested for possession of marijuana (¶71) at which time Detective Tracy and unnamed other detectives questioned him about the murders. (¶¶71; 73-74) Detectives Dietz and Tracy "used impermissible suggestion and/or pressure and/or coercion to induce [ ] Griffiths into falsely stating that [plaintiff] had murdered the Harris Brothers." (¶76) The alleged means of "impermissible suggestion and/or pressure and/or coercion"[5] was to "promise [ ] Griffiths favorable treatment, leniency and release from custody in exchange for these false statements." (¶77)

On March 22, 1993, plaintiff, based on Griffith's identification of him, was arrested and was indicted for the murders based on Griffith's grand jury testimony. (¶¶78, 83-85); *See also* Indictment, Exhibit B) Later, after receiving unspecified "reward[s]" from BCDAO, Griffiths "fled" to Jamaica and is now deceased. (¶¶8, 87)

Plaintiff makes the conclusory allegation that the detectives knew Griffith's statements were false and did not constitute "probable cause" to arrest plaintiff. (¶80) The AC is silent as to how the police would have known that Griffith's statements were false, or why any detective would falsely implicate plaintiff. Plaintiff maintains that there was no physical evidence to implicate him and has maintained his innocence. (¶¶ 79, 81) The AC does not say that any physical evidence exculpated plaintiff or that plaintiff (or any other witness) made any statements to investigators tending to exculpate plaintiff.[6]

**Plaintiff's Indictment and Further Investigation.** In August 1995, Dwight Robinson, an alleged "protégé" of Griffiths, was arrested as part of an investigation into the attempted

---

[5] Throughout the AC, plaintiff makes repetitive boilerplate and conclusory allegations that one or more defendants "used impermissible suggestion and/or pressure and/or coercion," "and/or improper inducements" to get witnesses to implicate him for the murder of the Harris brothers. (¶¶ 67, 76,112, 117, 161, 264, 275)

[6] Plaintiff alleges that his attorney knew of several witnesses who claimed that plaintiff was innocent of the murders; however, plaintiff does not allege that the police or prosecutors were aware of these alleged proclamations of innocence by those witnesses. (¶¶89, 90) Rather, plaintiff alleges in conclusory fashion that prosecutors knew their case "had no merit," without providing any factual basis as to how or why they believed that. (¶ 91)

murder of plaintiff. (¶¶10, 65, 100-102)[7] Detectives Price, Gottwin, Neenan, and Fortune met with Robinson and "upon information and belief . . . . were aware that [ ] Robinson was the 'Yankee guy'" who had been implicated by Griffith's girlfriend. (¶¶ 104) The AC is silent as to how the police allegedly knew that information.

The detectives "proposed allowing Mr. Robinson to operate his drug trade in the Wakefield neighborhood without 'heat' from the police if Mr. Robinson helped stem the violence was going on there." (¶¶108) In return, the detectives "demanded that Mr. Robinson provide evidence" implicating plaintiff, even though plaintiff claims that the detectives "were aware of evidence that Mr. Robinson was the murderer . . . . ." (¶ 109) The complaint does not allege, however, how the police knew Robinson was the murderer of the Harris Brothers or that plaintiff was not also involved in the double homicide. Robinson "agreed to falsely testify" that plaintiff "was responsible for murdering the Harris brothers." (¶110)

Plaintiff further alleges that "Detectives Price, Gottwin, Neenan, Fortune, ADA Karen, together with Robinson, used impermissible suggestion and/or coercion and/or improper inducements to compel several other drug dealers to falsely implicate [him] . . . ." (¶¶112-113) The prosecutors offered these individuals *recommendations* for leniency on open criminal charges in exchange for their false testimony. (¶¶114, 130) Nowhere does plaintiff allege that any of these individuals told investigators they were lying, or why any defendant would have had reason to believe these witnesses were lying.

Plaintiff next alleges that the same defendants "used impermissible suggestion and/or pressure and/or coercion to cause Kintu Effort to falsely implicate" him by threatening "to charge Mr. Effort as an accessory to the murder of the Harris brothers." (¶117) Plaintiff further

---

[7] Plaintiff does not allege that Robinson was arrested for trying to kill him, that the police knew that Robinson had attempted to kill him; nor does he allege that Robinson was ever charged or convicted for the attempted murder.

alleges that "Robinson and his drug-dealing associates would testify that Mr. Effort helped [plaintiff] murder the Harris brothers." (¶118)  ADA Karen offered Effort "a recommendation of leniency" on a looming prison sentence. (¶¶119-120, 132)  The complaint is silent as to who the police would have known that Effort was lying.

**Plaintiff's Criminal Trial.**    From October 11 to 30, 1995, plaintiff was tried before a jury. (¶127)  The trial evidence included testimony from multiple witnesses including Robinson and Effort. (¶128)  Plaintiff was convicted on two counts of murder in the second degree and sentenced to two consecutive terms of imprisonment of 25 years to life. (¶¶138)

**First CPL § 440.10 Hearing.**    On June 26, 2003, plaintiff moved, pursuant to New York Criminal Procedure Law § 440.10 ("§ 440.10"), to vacate his conviction ("First § 440.10 Motion") based on denial of a right to fair trial through a Brady violation and impartial jury, and newly discovered evidence. (¶149)   In support of that motion, Effort recanted his trial testimony and instead testified that plaintiff did not commit the murders. (¶¶145-147; *see also People v. Buari*, 2006 NY Slip Op 50597(U), ¶¶ 20-21, 11 Misc. 3d 1077(A), 1077A, 819 N.Y.S.2d 850, 850, 2006 N.Y. Misc. LEXIS 769 at ***35-42 (Sup. Ct. Bronx Cty. April 10, 2006), *aff'd People v. Buari*, 50 A.D.3d 483, 484-85 (App. Div. 1st Dept. 2008) (denying First § 440.10 Motion) (discussing testimony of Effort and other witnesses)).[8]  Prior to the first § 440 hearing, Effort had executed an affidavit under oath stating that his initial trial testimony was truthful and he recanted the trial testimony in an affidavit for Buari only because he feared for his life. *People v. Buari*, 2006 N.Y. Misc. LEXIS 769 at ***12.  But Effort recanted for a third time, and testified at the first 440 hearing that he gave earlier false testimony because prosecutors threatened to charge him as an accessory to the murder. (¶146)

---

[8] This Court may consider the first 440 decision as it is incorporated by reference in the AC at ¶164.  The Court may also take judicial notice of the First § 440 Decision. *See Houck*, 2016 U.S. Dist. LEXIS 136033, at *11

Plaintiff also asserted in the first § 440.10 motion that Robinson had confessed to the murders and told plaintiff's counsel that "he had falsely accused [plaintiff] of the Harris Brothers' murders and had gotten his associates to give similar false testimony against [plaintiff]." (¶¶150-153). Plaintiff does not allege that Robinson claimed at that time that he was coerced by anyone to falsely testify. In fact, Robinson claimed in an affidavit submitted *by plaintiff* in support of his first § 440 motion that Robinson had testified falsely against plaintiff because he had committed the murders, wanted to take over plaintiff's drug territory, had failed in a prior attempt to kill Buari, and decided to frame Buari and his associates for the murder to get rid of them. *People v. Buari*, 2006 N.Y. Misc. LEXIS 769, at ***8. Robinson did not allege that police or prosecutors knew of this, and later recanted that recantation in two later affidavits and in his sworn hearing testimony, stating that he had provided the affidavit out of fear that Buari would kill him or his family. *Id.* 2006 N.Y. Misc. LEXIS 769, at ***12.

Plaintiff next alleges that BCDAO Investigators including Viggiano, Schiffman, and Wall, met with Effort and Robinson, and "used undue suggestion and coercion" against them and their family members to get the witnesses to withdraw their recantations. (¶¶158-160) Plaintiff does not articulate any statements purportedly made to family members and alleges only that investigators "threatened Mr. Robinson" that he would spend the rest of his life in jail and would be denied all parole "if he did not recant his confession to murdering the Harris brothers." (*Id.*)

On November 17, 2004, a hearing on plaintiff's first § 440.10 motion was held in Bronx Supreme Court before the Honorable Dominic Massaro ("First § 440.10 Hearing"). (¶162) On April 10, 2006, Judge Massaro denied plaintiff's First § 440.10 Motion. (¶164; *see also People v. Buari*, 2006 N.Y. Misc. LEXIS 769, at ***70-81) Judge Massaro concluded that "Mr. Effort's testimony [in favor of plaintiff] was not only incredible on its face, but [also that] he appeared to

6

alter his story every time he was afforded a new attorney." *People v. Buari*, 2006 N.Y. Misc. LEXIS 769, at \*\*\*73-74.  The court credited Robinson's testimony that he had only purported to recant his trial testimony out of fear that he would be killed by plaintiff.  *Id.*, 2006 N.Y. Misc. LEXIS 769, at \*\*\*2, \*\*\*71-72.  Plaintiff unsuccessfully appealed that order.  (¶165); *see Buari*, 50 A.D.3d at 484-85.  Plaintiff also brought an unsuccessful habeas petition based on the same arguments. *See Buari v. Kirkpatrick*, 753 F. Supp. 2d 282, 296 (S.D.N.Y. 2010).

**Plaintiff's Second § 440.10 Motion and Hearing.**  On October 15, 2015, following a social media and publicity campaign blitz by plaintiff's counsel and others, plaintiff filed a second § 440.10 motion ("Second § 440.10 Motion") to vacate his conviction based on actual innocence and newly discovered evidence.  (¶¶166-187)  The alleged newly discovered evidence consisted of witnesses who came forward over two decades after the shooting to exculpate plaintiff.  *(Id.*; Second § 440.10 Decision, annexed to Scheiner Decl. as Exhibit A, at \*1)[9]  ADAs Lung, Coddington, and Mignola investigated the newly discovered evidence, including by interviewing witnesses.  (¶¶188-91, 194)  Plaintiff claims that the "investigators were adversarial and intimidating towards [his] witnesses" and ADA Lung "was unnecessarily adversarial and combative . . . ." (¶¶201-203, 211)  There is no allegation that defendants were previously aware of these new witnesses.  In fact, the only one of the witnesses to have ever previously spoken to police had told them that she had not seen the incident.  Second § 440.10 Decision, at 15.

After a hearing, the court granted plaintiff's Second § 440.10 Motion and ordered a new trial.  (¶¶187, 219, 225; *People v. Buari*, Ind. No. 2111-1993, slip op., Decision  of October 9, 2017 ("Second § 440.10 Decision"), at 19-21)  The court denied plaintiff's motion on the basis of actual innocence holding that plaintiff "failed to establish his innocence by clear and

---

[9] This Court may consider the Second § 440 Decision as it is incorporated by reference in the AC at ¶235.

convincing evidence", despite the testimony of the new witnesses.  (Second § 440.10 at 24)  The court also ruled that plaintiff failed to establish ineffective assistance of counsel, a *Brady* violation, or third-party culpability (*i.e.*, that Robinson was the shooter).  (*Id.*)  On May 24, 2017, BCDAO filed a Notice of Appeal of the state court's decision (¶227)  and, on March 21, 2018, moved to dismiss the indictment.  (¶¶ 241-42).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering a motion to dismiss, a court must "accept as true all factual claims in the complaint, and draw all reasonable inferences in the plaintiffs' favor."  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016).  However, the tenet that the court must accept all of the allegations in a complaint as true is inapplicable to legal conclusions.  In fact, a complaint with only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" does not meet the facial plausibility standard and does not rise above the speculative level.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also, In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While [*Twombly*] does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible.")

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation", and "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusion.").  *Iqbal*, 556 U.S. at 662-679, *quoting* Fed. R. Civ. P. 8(a)(2).  "'Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of

alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" *Peterson v. City of New York*, 11 Civ. 3141 (DLC), 2012 U.S. Dist. LEXIS 2658, at **5-6 (S.D.N.Y. Jan. 9, 2012) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).   Conclusory statements simply cannot "substitute for minimally sufficient factual allegations." *Paycom Billing Servs. v. Mastercard Intl, Inc.*, 467 F.3d 283, 289 (2d Cir. 2006); *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) ("bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss).   In deciding a motion to dismiss, courts will consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009).[10]

When raised, the defenses of absolute and qualified immunity should be resolved as early as possible in order "to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."   *Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991).

## ARGUMENT

### POINT I

### BCDAO DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY

A.    **The ADA Defendants Are Entitled to Absolute Immunity**

"It is well settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from

---

[10] *See also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted ); see also *Brown v. City of New York*, 14 Civ. 2668 (PAE), 2014 U.S. Dist. LEXIS 150577, at **5-6  n.2 (S.D.N.Y. Oct. 23, 2014) (allowing reliance on public records from related litigation); *Vasquez v. City of New York*, 99 Civ. 4606 (DC), 2000 U.S. Dist. LEXIS 8887, *2 n.1 & **11-12 (S.D.N.Y. June 28, 2000) (relying on indictment to dismiss malicious prosecution claim on the pleadings).

an action for damages under § 1983." *Roper v. Hynes*, 05 Civ. 7664 (WHP), 2006 U.S. Dist. LEXIS 69128, at *14 (S.D.N.Y. Sep. 27, 2006) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).    Absolute immunity applies equally to claims brought under New York state law. *Cooper v. Masiello*, 2000 U.S. Dist. LEXIS 5146, at *14 (W.D.N.Y. Apr. 13, 2000) (citing *Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (1988)).    To state a claim against prosecutors in their individual capacities, a plaintiff must "show that the officials' alleged misconduct was not intimately associated with the judicial phase of the criminal process nor simply a prosecutor's decision to commence a prosecution." *Allen v. City of New York*, 12-CV-496 (KAM) (LB), 2014 U.S. Dist. LEXIS 120347, *8 (E.D.N.Y. Aug. 27, 2014).    Instead, plaintiff must allege that a prosecutor engaged in misconduct unrelated to their role as an advocate. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("Absolute immunity protects a prosecutor from . . . liability for virtually all acts, regardless of motivation, associated with his function as an advocate.").

Even here, where plaintiff alleges that prosecutors engaged in the "falsification of evidence" and "the coercion of perjured testimony from a number of witnesses . . . . [a] prosecutor still acts within the scope of [his] duties even if []he makes false statements during judicial proceedings, knowingly uses false testimony, deliberately withholds exculpatory evidence, [or] engages in malicious prosecution." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Burns v. Reed*, 500 U.S. 478, 490 (1991) (holding a prosecutor is entitled to absolute immunity against claims that he made "false or defamatory statements in judicial proceedings . . . and also for eliciting false and defamatory testimony from witnesses)); *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (holding a prosecutor is "also entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and

the deliberate withholding of exculpatory information'). Any deprivations of liberty "are precisely the injuries for which *Imbler* granted absolute immunity." *See Collins v. City of New York*, 923 F. Supp. 2d 462, 472 (E.D.N.Y. 2013) (prosecutor entitled to absolute immunity despite having made false statements, coerced witnesses, and manufactured false evidence).

Here, plaintiff fails to allege that any conduct of the BCDAO Defendants that is "not intimately associated with the judicial phase of the criminal process" and thus not shielded by absolute immunity. More specifically, plaintiff alleges that ADA Karen, as the lead prosecutor at the criminal trial, "importuned, suborned and allowed" several witnesses to testify falsely. (¶¶129-134) Such allegations are precisely the kind of allegations rejected by the precedent above, to say nothing of their conclusory nature.

Similarly, plaintiff's claims against ADAs Lung, Coddington, and Mignola relate exclusively to their roles as advocates for New York State during the conviction integrity review relating to the Second § 440 Motion. "Conviction integrity review, by its nature, is 'intimately associated with the judicial phase of the criminal process'" and falls squarely within the scope of activities covered by absolute immunity. *Friedman v. Rice*, 5 N.Y.S.3d 816, 823 (Sup. Ct. 2015) (quoting *Imbler*, 424 U.S. at 430) (prosecutor is "entitled to absolute immunity for her conduct in producing the report of plaintiff's conviction integrity review," and noting that the specter of liability "would provide a strong disincentive to the commissioning of such reviews."); *see Warney v. Monroe Cty.*, 587 F.3d 113, 124 (2d Cir. 2009) (absolute immunity applies to prosecutors "dealing with post-trial initiatives challenging an underlying criminal conviction"); *see also Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) ("investigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction, are shielded by absolute immunity when done by prosecutors"). Thus,

plaintiff's allegations that the ADAs engaged in misconduct while leading the conviction integrity review are not actionable. At most, plaintiff alleges attempts to interfere with his presentation of witnesses and not any *actual* interference with his motion, on which he prevailed. (¶¶259, 275, 280) These conclusory allegations fall well within the judicial process and, in any event, did not cause any cognizable harm.

Likewise, plaintiff's separate claim for supervisory liability against ADA Mignola for her generalized failure to supervise the conviction integrity review fails. (¶¶ 296-302); *see also K.D. v. White Plains Sch. Dist.*, 921 F. Supp.2d 197, 206 (S.D.N.Y. Feb. 4, 2013)("an allegation that a supervisory official merely failed to exercise his or her authority over subordinates, without more, is insufficient to hold a defendant personally liable under § 1983 on a failure-to-intercede theory…or on a theory of supervisory liability."); *Vogelfang v. Capra*, No. 19 Civ. 3827 (PAE), 889 F. Supp. 2d 489 (S.D.N.Y. Mar. 13, 2012) ("]T]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." (quoting *Styles v. Goord*, 431 F. App'x 31,33 (2d. Cir. 2011)).

**B.    The BCDAO Investigators Are Entitled to Absolute Immunity**

The BCDAO Investigators assisting the Conviction Integrity Unit ("CIU") investigation are also protected by absolute immunity. "Because absolute immunity is essential to safeguarding the integrity of the judicial process, it extends to those [officials] performing functions closely associated with that process." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). This includes detective-investigators like the individual BCDAO Investigators in this matter. *Hill*, 45 F.3d at 660. "Absolute immunity covers . . . 'individual employees who assist' prosecutors and 'who act under [their] direction in performing functions closely tied to the judicial process.'" *Hamilton v.*

*City of New York*, 2019 U.S. Dist. LEXIS 56606, at \*39 (E.D.N.Y. Mar. 18, 2019) (quoting *Hill*, 45 F.3d at 660).[11]

Plaintiff admits that BCDAO Investigators worked under the ADAs' direction.  (¶¶201) Plaintiff does not allege that the BCDAO Investigators engaged in any conduct that falls outside of the protections of absolute immunity established in *Hill* and its progeny.  Accordingly, all claims against the BCDAO Defendants should be dismissed.

## POINT II

### PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW

Plaintiff pleads state and federal causes of action for malicious prosecution.  Both fail as a matter of law.  "[U]nder both Section 1983 and New York State law, a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice."  *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (citations and quotation marks omitted).

### A.    Plaintiff Cannot Rebut the Presumption of Probable Cause Created by the Grand Jury Indictment

A grand jury indictment creates a presumption of probable cause for the purposes of a malicious prosecution claim.  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).  This presumption "may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  *Id.* (emphasis in original) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)). The burden

---

[11] *See also Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004) (absolute immunity protects "prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process'"); *Jackson v. Seewald*, 2013 U.S. Dist. LEXIS 7733, at \*41 (S.D.N.Y. Jan. 14, 2013) (recommending dismissal of plaintiff's malicious prosecution claims in their entirety after finding "[a]bsolute immunity also shields the investigator defendants").

of rebutting that presumption lies with the plaintiff, and a malicious prosecution claim may be "dismiss[ed] . . . at the pleading stage where the plaintiff has failed to allege facts sufficient to rebut the presumption of probable cause flowing from a grand jury indictment." *Id.* at 73; *see Hadid v. City of New York*, 730 F. App'x 68, 71 n.1 (2d Cir. 2018) (collecting cases).

The standard for establishing misconduct sufficient to rebut the indictment's presumption of probable cause is high and a plaintiff cannot meet this burden by offering "mere conjecture and surmise that [an] indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Savino*, 331 F.3d at 73; *see also Simmons v. New York City Police Dep't*, 97 F. App'x 341, 342 (2d Cir. 2004) ("although [plaintiff] testified that the arresting officer . . . . told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct"); *Bond v. City of New York*, 2015 U.S. Dist. LEXIS 130922, at *16 (E.D.N.Y. Sep. 28, 2015) (plaintiff's own version of events, without more, was insufficient to rebut the presumption of probable cause).

Plaintiff concedes that he was indicted based on the grand jury testimony of an eyewitness (Griffiths). (¶¶ 83-85) Plaintiff's only attempt to undercut the probable cause arising from this testimony and indictment is his conclusory allegation that Griffiths was "coerced" by defendants to falsely testify. (¶¶ 76-78) But nowhere does plaintiff allege the key necessary fact: that defendants had reason to know that Griffith's testimony was false.[12] Most tellingly, the AC contains no allegations of a witness stating that plaintiff was innocent prior to the First §

---

[12] Plaintiff's assertion that police knew that another drug dealer, Robinson – who later testified against plaintiff – was one of the "Yankee guys" mentioned by a prior hearsay witness (Griffith's girlfriend) who had not seen the incident, hardly undercuts probable cause, especially since – according to the AC – "Yankee guys" was mentioned in the plural. (¶¶ 69-70, 104)

440.10 motion.  Nor does plaintiff cite to any exculpatory physical evidence.  Without this critical link, plaintiff's theory collapses.

Nor are any later purported recantations by prosecution witnesses after the trial sufficient to dispel probable cause.  Indeed, in his decision on the First 440.10 motion, Judge Massaro found that plaintiff's allegations and evidence were insufficient to undercut the conviction notwithstanding the testimony of one of the prosecution's witnesses, and an affidavit by another (later contradicted by later affidavits and hearing testimony), that they had testified falsely at the trial. *See People v. Buari*, 2006 N.Y. Misc. LEXIS 769, at 73-74.  That ruling was upheld on appeal in state courts and in a federal habeas petition. *See supra* at _.

It was not until plaintiff produced new witnesses, previously unknown to defendants. that a new trial was granted.  Even then, the court did not dismiss plaintiff's indictment, showing that the new exculpatory witnesses did not vitiate probable cause.  (*See* Ex. D at 24)  Here, as in *Savino*, plaintiff presents nothing more than his own conclusory version of coercion to rebut the presumption of probable cause created by his original indictment.  This is plainly insufficient.

## B.      Plaintiff Cannot Demonstrate a Favorable Termination

Plaintiff's malicious prosecution claims also fail because the dismissal of plaintiff's criminal prosecution did not constitute a favorable termination.  Under New York State law, a favorable termination requires that "the circumstances surrounding the termination are not inconsistent with the innocence of the accused."  *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001). "[T]he New York Court of Appeals has clarified that there is no *per se* rule that a dismissal in the interest of justice can never constitute a favorable termination."  *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 357, 368 (S.D.N.Y. 2010) (citing *Cantalino*, 96 N.Y.2d at 396).  Where a dismissal in the interest of justice leaves "the question of guilt or innocence unanswered[,] . . . as a matter of law, it cannot provide the favorable termination required as the basis for [that]

claim." *Hygh v. Jacobs*, 961 F.2d 359, 367 (2d Cir. 1992) (internal quotations and citations omitted).  Here, the state court denied that part of the Second § 440 Motion seeking dismissal on grounds of actual innocence, even after hearing the evidence plaintiff presented to prove his innocence.  (Second § 440.10 Decision at 12).  Since the court rejected plaintiff's contention of actual innocence and the prosecution voluntarily dismissed the indictment, there is nothing to show a termination not inconsistent with actual innocence.  *Crisafi*, 718 F. Supp. 2d at 367.

The Second Circuit recently held that "a plaintiff asserting a malicious prosecution claim under § 1983 must still show that the underlying criminal matter ended in a manner that *affirmatively indicates* his innocence."  *Lanning v. City of Glen Falls*, 908 F.3d 19, 22 (2d Cir. 2018) (emphasis added).  A § 1983 malicious prosecution termination must be "indicative of plaintiff's innocence," rather than the state law standard of "not inconsistent with the Plaintiff's innocence."  *Id.* at 24-25 ("we write to dispel any confusion among district courts about the favorable termination element of a § 1983 malicious prosecution claim").  As plaintiff cannot establish a favorable termination under the state standard, he certainly cannot meet the *Lanning* standard under federal law.  Accordingly, malicious prosecution claim should be dismissed.

## C.      Defendants Did Not Initiate or Continue the Prosecution

The malicious prosecution claim must also be dismissed because there is no defendant who could have initiated the prosecution of Buari, as required for malicious prosecution.  A police officer did not initiate a prosecution unless they provided false evidence to prosecutors, or withheld exculpatory evidence required to be disclosed, thus causing the prosecutor to go forward.  *See, e.g., King v. City of N.Y.*, No. 12-CV-2344 (NGG) (RER), 2014 U.S. Dist. LEXIS 140790, at *12 (E.D.N.Y. Sep. 30, 2014).  Nothing in the complaint suggests that this occurred.  And the prosecutors, for their part, enjoy absolute immunity for their decision whether or not go forward with a prosecution.  *See supra*, Part I.

In addition, no defendants could be liable for the prosecution where, after hearing all of the available evidence, the state court at every stage indicted plaintiff, convicted plaintiff, and denied plaintiff's post-trial motions.. Absent evidence know to the defendants but unknown to the state court, the court's exercise of independent judgment breaks the chain of causation. *See, e.g., Townes v. City of N.Y.*, 176 F.3d 138, 147 (2d Cir. 1999) (state court's decision to not suppress evidence obtained from an illegal search broke the chain of causation). There are no allegations of such concealed evidence.

## POINT III

### PLAINTIFF'S DENIAL OF RIGHT TO FAIR TRIAL CLAIM BASED ON FABRICATED EVIDENCE FAILS

Plaintiff's denial of a right to fair trial claim based on fabrication of evidence fails because of the absence of facts supporting a plausible inference that any defendant knew that the testimony against Buari was false. The Second Circuit 'restricts fair trial claims based on fabrication of information' to cases where 'an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.'" *Debrosse v. City of New York*, 739 F. App'x 48, 51 (2d Cir. 2018) (quoting *Garnett v. Undercover Officer 0039*, 838 F.3d 265, 279 (2d Cir. 2016)). The AC fails to meet these stringent requirements.

**A.    Plaintiff Fails to Sufficiently Allege Knowledge of Fabricated Information**

To establish a plausible claim for denial of a right to fair trial to survive a motion to dismiss, plaintiff must "state with the requisite specificity the evidence that was purportedly fabricated." *Longo v. Ortiz*, 15-CV-7716 (VEC), 2016 U.S. Dist. LEXIS 131558, at *21 (S.D.N.Y. Sep. 26, 2016); *Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (summary order) (same). "'[T]he requirements that the information be both false and likely to

influence a jury's decision constrain the types of information that can serve as the basis for a denial of the right to a fair trial claim.'" *Id.* (quoting *Garnett*, 838 F.3d at 280).

Here, plaintiff repeatedly asserts the boilerplate language that defendants, in some combination, "used impermissible suggestion and/or pressure and/or coercion" or offered "improper inducements" for almost every witness involved to convince them to falsely testify against him. (¶¶ 67, 76,112, 117, 161, 264, 275)  But, "[t]he mere fact that a witness was offered a reward for giving a statement does not show the falsity of the statement, [n]or [does it] negate probable cause."  *Myers v. Cty. of Nassau*, 825 F. Supp. 2d 359, 369 (E.D.N.Y. 2011) (dismissing plaintiff's denial of fair trial claim).  As the *Myers* court noted that, "in the vast majority of criminal prosecutions, law enforcement officers worked with cooperating witnesses of less than stellar moral character," and that "[t]his is the norm, and not the exception." *Id.* Nor is a promise of leniency any sort of 'coercion.'  *See Brown v. City of New York*, 16-CV-1919 (ALC), 2018 U.S. Dist. LEXIS 135478, at *31 (S.D.N.Y. Aug. 10, 2018) ("A plaintiff alleging coercion [of a confession] must allege more than that police told her she was a suspect, suggested that it would be to her benefit to cooperate, or promised leniency in exchange for cooperation." *Sedunova v. City of New York*, 652 F. App'x 29, 31 (2d Cir. 2016) (citing *United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995)))  Thus, plaintiff's near exclusive reliance on promises of leniency in exchange for cooperation[13] fail to support his fabrication of evidence claim, absent allegations – here entirely absent – about how defendants would have known that the testimony of the witnesses was false.[14]

---

[13] The allegation that Richardson was told he would not be paroled if he persisted in asserting that his prior testimony was false is no more than a promise of lenience for cooperation.  (¶160).  It stands to reason that if a felon contends that he committed perjury to obtain favorable treatment, that could negatively affect his chance of parole.

[14] As the word fabrication implies, the claim requires the deliberate "fabrication and forwarding to prosecutors of *known* false evidence."  *Garnett*, 838 F.3d at  278 (emphasis added).  Plaintiff also alleges that defendants failed to conduct "a minimally adequate" or "constitutionally adequate" investigation."  (¶¶ 56)  The right to a fair trial does

**B.      Plaintiff Cannot Demonstrate the Required Favorable Termination**

A claim for fabrication of evidence is subject to a three-year statute of limitations that begins to accrue only when the criminal proceedings against the defendant terminate in his favor. *See McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019).  In *McDonough* the Supreme Court elaborated that, just as *Heck v. Humphrey* bars a claim for malicious prosecution prior to a favorable termination of the criminal proceedings, it also bars a claim for fabrication of evidence prior to a favorable termination. *McDonough*, 139 S. Ct. at 2156 ("[F]avorable termination is both relevant and required for a claim analogous to malicious prosecution[.]"); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).[15]   Because plaintiff cannot establish a favorable termination as detailed in Point  II *supra*, he cannot meet this requirement for his fabrication of evidence claim.

**C.      Plaintiff Relies on Group Pleading and Fails to Sufficiently Allege the Personal Involvement of all Defendants or Failure to Intervene**

A complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct fails to satisfy this minimum standard."  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).[16]  Here, plaintiff fails to state: what each

---

not include a right to an adequate police investigation.  *See Hicks v. Marchman*, 719 F. App'x 61, 64 (2d Cir. 2018) (dismissing denial of fair trial claim because plaintiff "cite[d] no authority for the proposition that there is a stand-alone fair trial claimed based on officers' failure to conduct an adequate investigation").

[15] *See also Breton v. City of New York*, No. 17-CV-9247 (JGK), 2019 U.S. Dist. LEXIS 150407 at n. 2 (S.D.N.Y. Sept. 3, 2019) ("The Supreme Court recently held that a claim for the denial of a fair trial based on fabrication of evidence does not accrue until the criminal proceedings terminate in favor of the plaintiff."); *McKenzie v. City of New York*, No. 17-CV-4899 (PAE), 2019 U.S. Dist. LEXIS 121937 at *46 (S.D.N.Y. July 22, 2019) ("Section 1983 claims for fabrication of evidence cannot be brought 'prior to favorable termination of [a plaintiff's] prosecution.).

[16] *See also DiPippo v. Cty. of Putnam*, 2019 U.S. Dist. LEXIS 33071, at **46-47 (S.D.N.Y. Feb. 28, 2019) (dismissing "general, conclusory, blanket claims against all Defendants, and [were] insufficient to put each Defendant on notice about what Plaintiff's actual grievances [were]"); *Holmes v. Allstate Corp.*, 11 Civ. 1543 (LTS) (DF), 2012 U.S. Dist. LEXIS 24883, at *69 (S.D.N.Y. Jan. 27, 2012) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."); *Bouche v. City of Mount Vernon*, 2012 U.S. Dist. LEXIS 40246, at *25 (S.D.N.Y. Mar. 23, 2012) (dismissing claim because plaintiff "only refer[red] to the defendants in the collective, never identifying which defendants were responsible for specific actions").

individual defendant allegedly did to pressure any of the various witnesses into allegedly providing false testimony; what each defendant allegedly knew about the un-alleged exculpatory evidence; and how the actions of each defendant individually rises to the level of a constitutional violation. (Plaintiff cannot evade this requirement simply by implausible allegations that the defendants did everything together.) As such, plaintiff's denial of fair trial should be dismissed.

Nor can plaintiff overcome this problem by claiming failure to intervene. "A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). However, liability only attaches when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill*, 839 F.2d at 11-12). Of course, there can be no failure to intervene where there is no constitutional violation. *Feinberg v. City of New York*, 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098, at *4 (S.D.N.Y. Aug. 13, 2004) ("if the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends") (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Here, plaintiff cannot establish a violation of a constitutional right by any of the defendants. *See supra*.[17]

---

[17] In addition, "'[w]here the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable.'" *Ulerio v. City of New York*, 18 Civ. 2155 (GBD), 2018 U.S. Dist. LEXIS 215166, at *17 (S.D.N.Y. Dec. 20, 2018) (quoting *Sanabria v. Tezlof*, 11-CV-6578 (NSR), 2016 U.S. Dist. LEXIS 107104, at *17 (S.D.N.Y. Aug. 12, 2016)). The AC does not distinguish which defendants were direct participants in any alleged constitutional violation and which failed to intervene. (¶324) Such unclear allegations will not survive a motion to dismiss. *See Ulerio*, 2018 U.S. Dist. LEXIS 215166, at *17 (dismissing failure to intercede claim where it was "unclear which of the Officer Defendants that Plaintiff claims were direct participants in the violations").

## POINT IV

## PLAINTIFF'S CONSPIRACY CLAIM FAILS

Plaintiff's claim for conspiracy fails as a matter of law. "To successfully assert a § 1983 claim for conspiracy, plaintiff must show: (1) an agreement between two or more state actors … (2) to act in concert to inflict an unconstitutional injury and (3) an overt act done in furtherance of that goal causing harm to plaintiff." *Little v. City of New York*, 487 F. Supp. 2d 426, 441 (S.D.N.Y. 2007). "A § 1983 conspiracy claim 'will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.'" *Bertuglia v. Schaffler*, 672 F. App'x 96, 102 (2d Cir. 2016) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). As set forth above, plaintiff cannot establish an underlying constitutional violation.

Furthermore, "it is ludicrous to suggest that the everyday event of a prosecutor making deals with witnesses . . . would plausibly suggest a conspiracy."); *Gordon v. Emmanuel*, 2018 U.S. Dist. LEXIS 169315, at *29 (E.D.N.Y. Sep. 28, 2018) ("proof that a witness signed a sworn court statement, even a false one, is not sufficient to prove that the witness is 'carr[ying] out a deliberate, previously agreed upon plan' with police maliciously to prosecute [plaintiff]….) To survive dismissal, a § 1983 conspiracy claim must "'provide some factual basis supporting a meeting of the minds,' such an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." *Blue v. City of New York*, 2018 U.S. Dist. LEXIS 93509, at *26 (S.D.N.Y. June 4, 2018). The AC's allegation (¶7) that plaintiff was "known to" the defendants hardly provides plausible support for a conspiracy to frame him. Accordingly, plaintiff's conspiracy claim fails.

## POINT V

## PLAINTIFF'S MUNICIPAL LIABILITY CLAIM FAILS

Plaintiff brings a claim for municipal liability against the NYPD and BCDAO predicated upon alleged policies, practices, and/or customs of coercive tactics, fabrication of evidence, failure to disclose evidence, and initiation of arrest and prosecution without probable cause, with a corresponding claim of failure to train otherwise. (¶¶303-345)  This claim fails.

To prevail on a § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused his constitutional injury.  *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690-91 (1978).  To do so, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . . [s]econd, the plaintiff must [also] establish a causal connection – an 'affirmative link' – between the policy and deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987) (citing and quoting *Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 n.8 (1985)).  Plaintiff must set forth facts supporting the inference that acts of the municipality itself were the cause of his injuries. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

To demonstrate the existence of a policy or custom, a plaintiff must show (1) "a formal policy officially endorsed by the municipality"; (2) actions or decisions taken by a municipal official "responsible for establishing the municipal policies that caused the particular deprivation in question"; (3) "a practice so consistent and widespread that . . . [it] constitutes a custome or usage"; or (4) "a failure by policymakers to provide adequate training or supervision to

subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Jones v. Westchester Cty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (citation omitted). Here, plaintiff appears to proceed on the third and fourth theorioes against the NYPD and BCDAO.

As with any other claim at the motion to dismiss stage, a plaintiff asserting a *Monell* claim "must allege 'sufficient factual detail' and not mere 'boilerplate allegations' that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 636 (E.D.N.Y. 2017) (quoting *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011)). A municipality is liable under § 1983 "only when the entity itself is a 'moving force' behind the deprivation" of the plaintiff's constitutional right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694))). A municipality is only the "moving force" behind a plaintiff's alleged injury if the municipality acted deliberately, "with the requisite degree of culpability." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). In other words, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of [his] federal rights." *Id.*

**A.      Plaintiff Failed to Establish an Underlying Constitutional Violation**

For a *Monell* claim to succeed, plaintiff must first plead facts and present evidence showing an underlying violation of his constitutional rights. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). As explained in Points II and III, *supra*, plaintiff cannot establish an underlying constitutional violation against any of the individual defendants, which is likewise fatal to his *Monell* claims against their employers.

**B.      Plaintiff Fails to Sufficiently Allege an Official Policy or Practice**

"To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality."  *Missel v. County of Monroe*, 351 Fed. Appx. 543, 545 (2d Cir. 2009).

In his *Monell* claim against the NYPD, plaintiff relies heavily on (i) the "Mollen Commission" report dated July 7, 1994; (ii) an advisory committee report from 1987; and (iii) vague unspecified allegations of prior and subsequent incidents of misconduct similar in nature to the misconduct alleged by plaintiff .  (¶¶ 307-319)  Plaintiff's reliance on these reports and unspecified purported instances of misconduct is unavailing.  In fact, courts routinely dismiss *Monell* claims relying on such reports. *See Isaacs v. City of New York*, No. 16 Civ. 4729 (KAM), 2018 U.S. Dist. LEXIS 132995, at *51 (dismissing plaintiff's *Monell* claim, finding "plaintiff's reliance on the Mollen Commission Report, and other pronouncements from years ago," is "unavailing" because plaintiff failed to connect the reports to the specific facts of his case).[18]

Likewise, plaintiff's reliance on a list of 23 allegedly similar incidents of alleged misconduct by BCDAO spanning over two decades is insufficient to establish a *Monell* claim. Plaintiff's proffered list shows only one alleged violation per year over such timeframe; a statistically insignificant number in light of the 218,122 misdemeanor arrests and 84,275 felony arrests in New York City in 2014 alone.  *See* https://www.criminaljustice.ny.gov/crimnet/ojsa/

---

[18] *See also Aguirre v. City of New York*, 2017 U.S. Dist. LEXIS 155422, at *6 (E.D.N.Y. Sept. 22, 2017) ("[P]laintiff's reliance on reports and articles regarding misconduct by NYPD officers are inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to Plaintiff's alleged violation.").

dispos/nyc.pdf (accessed Dec. 9, 2019). Indeed, if that number demonstrates anything, it is the absence of a pattern of misconduct.

Further, a cursory review of plaintiff's list – as well as to his citations to various other misconduct complaints – reveals that those incidents cannot be tied to the specific sort of misconduct alleged in this case. Thus, plaintiff fails to allege comparable acts that would support the existence of an unconstitutional custom or practice that caused plaintiff's particular injuries. *Boddie v. City of New York*, 2016 U.S. Dist. LEXIS 50248, at *8 n.3 (S.D.N.Y. Apr. 13, 2016) (citing *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 408 (E.D.N.Y. 2011).

Plaintiff also relies on an attorney's 2011 law review article in support of his *Monell* claim against the BCDAO. (¶¶ 328-336) Such an article is inadmissible in the context of *Monell* claims "when offered to prove the truth of the contents." *Nelson v. City of Stamford*, 2012 U.S. Dist. LEXIS 8907, at *46-47 (D. Conn. Jan. 25, 2012) (citing *Delrosario v. City of New York*, 2010 U.S. Dist. LEXIS 20923, 2010 WL 882990, at *7 (S.D.N.Y. Mar. 4, 2010) (noting that a New York Times article submitted by the plaintiff as evidence in opposition to summary judgment in the context of a *Monell* claim was inadmissible when offered to prove the truth of the matter asserted)); *Tchatat v. City of New York*, 2015 U.S. Dist. LEXIS 142483, at *4 (S.D.N.Y. Oct. 20, 2015) (noting that references to news reports are immaterial to plaintiff's claim). The article is an advocacy piece that merely shows that other lawyers also wish to sue the City, not that a pattern of deliberate indifference or failure to train has occurred.

C.    **Plaintiff Fails to Sufficiently Allege a Failure to Train**

A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. In order to prove liability for failure to train, plaintiff must demonstrate a "pattern of *similar* constitutional violations" by employees sufficient to place policymakers on notice "that a course of training is deficient in a particular

respect." *City of Canton*, 489 U.S. at 388 at 9-10 (emphasis added).  To show a failure to train employees, plaintiff must prove a "pattern" of conduct, *see Reynolds v. Guiliani*, 586 F.3d 183, 192 (2d. Cir. 2007), that violates the civil rights of citizens "repeatedly," *Riccuiti v. New York City Transit Auth.*, 941 F.2d 123 (2d Cir. 1997), and "persistent[ly]," *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d. Cir. 1983), on a "widespread" basis.  *Connick*, 563 U.S. at 61.  "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'"  *Connick*, 563 U.S. at 61 (quoting *Brown*, 520 U.S. at 410).  "[W]ithout notice that a course of training is deficient *in a particular respect*, decisionmakers can hardly be said to have deliberatively chosen a training program that will cause violations of constitutional rights."  *Boddie*, 2016 U.S. Dist. LEXIS 50248, at *12 (quoting *Connick*, 563 U.S. at 62) (emphasis added).  Even if plaintiff alleged a pattern of misconduct, plaintiff failed to allege any specific defect in the training program that made it ineffective.

## POINT VI

### THE DEFENDANTS ARE ENTITLED TO <u>QUALIFIED IMMUNITY</u>

Qualified immunity is available to a defendant "if (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d Cir. 1993) (quotation and citation omitted).  Only when "no officer of reasonable competence could have made the same choice in similar circumstances" is an officer's conduct unreasonable and undeserving of qualified immunity.  *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) (quotation omitted).  As explained above, probable cause existed to arrest and prosecute plaintiff for the double homicide.  These facts certainly satisfy the more lenient standard of "arguable probable cause" required for qualified immunity under

federal or state law.  *Thomas v. City of N.Y.*, 11 Civ. 2219 (LAP), 2013 U.S. Dist. LEXIS 47687, at *22 (S.D.N.Y. Mar. 31, 2013), *aff'd*, 2014 U.S. App. LEXIS 6939 (2d Cir. Apr. 15, 2014). Prosecutors receive the same protection, in the rare instance that they are not protected by absolute immunity.  Courts consistently grant qualified immunity where, as here, defendants act on the basis of information from a complaining victim or eyewitness.  *See*, *e.g.*, *Id.*, at *24, *30.

The detectives are further entitled to qualified immunity because the decision to commence and continue plaintiff's prosecution rested with the District Attorneys' Office.  *Cf. Gil v. County of Suffolk*, 590 F. Supp. 2d 360, 371 (E.D.N.Y. 2008); *Harris v. County of Nassau*, 581 F. Supp. 2d 351, 356 (E.D.N.Y. 2008) ("[T]he police officer defendants possessed no authority over the prosecution and are therefore entitled to the defense of qualified immunity from a claim of malicious prosecution").

## POINT VII

### PLAINTIFF'S REMAINING STATE LAW CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's claims for intentional ("IIED") and negligent ("NIED") infliction of emotional distress should be dismissed.  A plaintiff cannot maintain a claim for IIED when the conduct underlying the claim falls within the ambit of other tort remedies.  *Jackson v. City of New York*, 29 F. Supp. 3d 161, 183 (E.D.N.Y. 2014) (dismissing plaintiff's IIED claim because it "overlap[ped] with his claims of assault, battery, and false arrest"); *see also Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017) ("Plaintiff has not shown the unavailability of traditional theories of tort recovery, so invocation of this 'last resort' cause of action [of intentional IED] is not appropriate.").  Similarly, the "New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available."  *Romero v. City of New York*, 839 F. Supp. 2d 588, 632 (E.D.N.Y. 2012) (citing

*Moore*, 219 F. Supp. 2d 335 at 339.  Plaintiff's IIED and NIED claims are duplicative of his claims for malicious prosecution and fabrication of evidence, and should be dismissed.[19]

Plaintiff pleads a claim for generic violation of his right to due process under the New York State Constitution, Article 1 §6.  This is duplicative of his federal claims and does not describe any separate elements or injury and, accordingly, should be dismissed. *See, e.g., Hollins v. City of N.Y.*, No. 10 Civ. 1650, 2014 U.S. Dist. LEXIS 183076 (S.D.N.Y. Mar. 3, 2014) (N.Y. constitution provides no private right of action where Section 1983 provides a remedy); *Batista v. City of New York*, No. 05 Civ. 844 (KMK), 2007 U.S. Dist. LEXIS 71905, at *30 (S.D.N.Y. Sept. 24, 2007) (Plaintiffs have "no private right of action under the New York State Constitution for claims that are remediable under § 1983 or other state laws.").[20]

## CONCLUSION

For the reasons stated above, the AC should be dismissed in its entirety with prejudice.

Dated:      New York, New York
            December 11, 2019

                          JAMES E. JOHNSON
                          Corporation Counsel of the City of New York
                          *Attorney for Defendants*
                          100 Church Street
                          New York, New York 10007
                          (212) 356-2344/5054

                 By:      *Alan H. Scheiner*   /s/

                          Alan H. Scheiner
                          Frank A. DeLuccia
                          *Senior Counsels*

To:      All Counsel of record (via ECF)

---

[19] In a letter to the Court dated July 12, 2019, plaintiff withdrew his state law negligence claims.  (*See* Dkt. No. 100) In any event, plaintiff cannot assert a general claim of negligence in connection with a claim stemming from an intentional arrest.  *Boose v. City of Rochester*, 421 N.Y.S.2d 740, 743 (4th Dep't 1979) (plaintiff seeking damages for injury resulting from wrongful arrest and detention "may not recover under broad general principles of negligence . . . but must proceed by way of the traditional remedies of false arrest and imprisonment"); *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994) (same).

[20] Plaintiff's claim for *respondeat superior* liability is also entirely derivative of his other state law claims, and therefore should be dismissed as well.