UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

CALVIN BUARI,

                           Plaintiff,

           - against -

THE CITY OF NEW YORK; New York City Police
Department Detectives ANDREW DIETZ, FNU TRACY,
VINCENT PRICE, EUGENE GOTTWIN, JOSEPH
NEENAN, CHRISTINE FORTUNE; Bronx County District
Attorney's Office Investigators JOHN WALL, FNU
SCHIFFMAN, FRANK VIGGIANO; Bronx County District
Attorney's Office Assistant District Attorneys ALLEN
KAREN, FELICITY LUNG, PETER CODDINGTON, GINA
MIGNOLA; and "JOHN and/or JANE DOES" # 1-10 who
are currently unknown members of the New York City Police
Department; and "RICHARD and/or RACHEL ROES # 1-
10" who are currently unknown members of the Bronx
County District Attorney's Office, all of whom are being sued
in their individual capacities,

                         Defendants.

                                  **18-CV-12299 (MKV)**

------------------------------------------------------------------- X


## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## THE FIRST AMENDED COMPLAINT


                               BELDOCK LEVINE & HOFFMAN LLP
                               99 Park Avenue, 26th Floor
                               New York, New York 10016
                               (212) 490-0400

                               CUOMO LLC
                               200 Old Country Road
                               Mincola, New York 11501
                               (516) 741-3222

                               *Attorneys for Plaintiff Calvin Buari*

TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

PRELIMINARY STATEMENT...............................................................................1

STATEMENT OF FACTS.........................................................................................1

LEGAL STANDARD................................................................................................6

ARGUMENT............................................................................................................7

I.     DEFENDANTS STATEMENT OF FACTS
SHOULD BE STRICKEN ....................................................................................7

II.    THE BCDAO DEFENDANTS ARE NOT ENTITLED
TO QUALIFIED IMMUNITY..............................................................................8

      A.    Defendants Have Not Met Their Burden of Proving the
ADA Defendants Are Entitled to Absolute Immunity ...........................9

      B.    Defendants Have Not Met Their Burden of Proving
the Conviction Integrity Unit ADA Defendants Are
Entitled to Absolute Immunity .............................................................10

      C     Defendants Have Not Met Their Burden of Proving the
BCDAO Investigators Are Entitled to Absolute Immunity ..................12

III.    PLAINTIFF'S MALICIOUS PROSECUTION CLAIM IS VIABLE..................13

      A.    Defendants Have Not Met Their Burden of Proving the
ADA Defendants Are Entitled to Absolute Immunity .........................13

      B.    The Prosecution Was Favorably Terminated .......................................14

IV    PLAINTIFF HAS ALLEGED A PLAUSIBLE
FAIR TRIAL CLAIM ........................................................................................17

      A.    Plaintiff Plausibly Alleges Defendants Knowingly
Coerced False Evidence to Cause Plaintiff's
Indictment and Conviction ...................................................................17

      B.    Plaintiff Has Adequately Pled Favorable Termination .......................19

C.     Plaintiff Does Not Rely on Group Pleading....................................19

D.     Plaintiff's Failure to Intervene Claim Based on
His Fair Trial Claim is Viable..................................................20

V.     PLAINTIFF'S HAS ADEQUATELY PLEADED
HIS CONSPIRACY CLAIM..................................................21

VI.    PLAINTIFF HAS STATED A PLAUSIBLE
MUNICIPAL LIABILITY CLAIM.........................................22

A.     Plaintiff Plausibly Alleges an Underlying Constitutional Violation........23

B.     Plaintiff Sufficiently Alleges an Official Policy and Practice....…..........23

C.     Plaintiff Plausibly Alleges a Failure to Train..................................26

VII.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY..........27

VIII.  PLAINTIFF'S CONSTITUTIONAL STATE LAW CLAIMS ARE VIABL.......27

CONCLUSION.................................................................................28

TABLE OF AUTHORITIES

*Cases*                                                                                    *Pages*

*Abdulgalil Kaid Alwan v. City of New York*,
   311 F. Supp. 3d 570 (E.D.N.Y. 2018)……………………..…………………….28

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970)……………………………………………………....…21

*Amnesty Am. v. Town of Hartford*,
   361 F.3d 113 (2d Cir. 2004)…………………………………….…………..25

*Anderson v. Branen*,
   17 F.3d 552 (2d Cir. 1994)……………………………………………………20

*Anderson News, LLC v. Am. Media, Inc.*,
   680 F.3d 162, 185 (2d Cir. 2012)…………………………...…………………7

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)……………………………………………….6-7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)…………………………………………...………….6, 7

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001)………………………………………..……..19

*Babi-Ali v. City of New York*,
   979 F. Supp. 268 (S.D.N.Y. 1997)…………………………………………25

*Baily v. City of New York*,
   79 F. Supp. 3d 424 (E.D.N.Y. 2015)………………………………….…....27

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)……………………………….…………………..……7

*Boncinimo v. N.Y. Unified Court Sys.*, No. 17 Civ. 6760 (VSB),
   2018 U.S. Dist. LEXIS 82024 (S.D.N.Y. May 15, 2018)…………………….………26

*Boyd v. City of New York*,
   336 F.3d 72 (2d Cir. 2003)…………………………………….…………….13

*Boykin v. KeyCorp*,
   521 F.3d 202 (2d Cir. 2008)………………………………….……………….7

*Brandon v. City of New York*,
    705 F. Supp. 2d 261 (S.D.N.Y. 2010)……………………………………………..22

*Brown v. City of New York*, No. 16 Civ. 1919 (ALC),
    2018 U.S. Dist. LEXIS 135478 (S.D.N.Y. Aug. 10, 2018)…………………………..17

*Buckley v. Fitzsimmons*,
    509 U.S. 259 (1993)………………………………………………………………..8, 11

*Buie v. City of New York*, No. 12 Civ. 4390(RJD)(CLP),
    2015 U.S. Dist. LEXIS 147642 (E.D.N.Y. Oct. 30, 2015)………………………….17

*Burns v. Reed,*
    500 U.S. 478 (1991)……………………………………………..……………..….9, 11

*Cantalino v. Danner*,
    96 N.Y.2d 391, 395 (2001)…………………………………………..………..17

*Ciambriello v. County of Nassau*,
    292 F.3d 307 (2d Cir. 2002)…………………………………………..…..…..21

*Collins v. City of New York*,
    923 F. Supp. 2d 462 (E.D.N.Y. 2013)…………………………………….…...24

*Colon v. City of New York*,
    60 N.Y.2d 78 (1983)…………………………………………..…….…….13

*Delrosario v. City of New York*, No. 07 Civ. 2027 (RJS),
    2010 U.S. Dist. LEXIS 20923 (S.D.N.Y. Mar. 4, 2010)……………………………26

*Demosthene v. City of New York*, No. 18 Civ. 1358 (ARR)(PK),
    2019 U.S. Dist. LEXIS 4901 (E.D.N.Y. Jan. 10, 2019)……………………….....13-14

*Disorbo v. Hoy*,
    74 F. App'x 101 (2d Cir. 2003)……………………………………….………..25

*Doe. v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)……………………………………………...……..17

*Doe v. Phillips*,
    81 F.3d 1204 (2d Cir. 1996)………………………………………….……......9

*Fiacco v. City of Rensselaer*,
    783 F.2d 319 (2d Cir. 1986)………………………………………….……25, 26

*Fielding v. Tollaksen,*
   257 Fed. Appx. 400 (2d Cir. 2007)……………………………………..……………8

*Fisk v. Letterman,*
   401 F. Supp. 2d 362 (S.D.N.Y. 2005)……………………………………….......21

*Forney v. Forney,*
   96 F. Supp. 3d 7 (E.D.N.Y. 2015)……………………………………….…….20

*Friedman v. Rehal,*
   618 F.3d 142 (2d Cir. 2010)………………………………………..……………12

*Friedman v. Rice,*
   5 N.Y.S.3d 816 (Sup. Ct., Nassau Cnty 2015)…………………………………...11-12

*Garnett v. Undercover Officer C0039,*
   838 F.3d 265 (2d Cir. 2016)…………………………………………….……17

*Global Network Communications, Inc. v. City of New York,*
   458 F.3d 150 (2d Cir. 2007)………………………………………………6 n. 2, 6 n. 3, 8

*Hill v. City of New York,*
   45 F.3d 653 (2d Cir.1995)………………………………………………..8, 9

*Hincapie v. City of New York,* No. 18 Civ. 3432 (PAC),
   2020 U.S. Dist. LEXIS 10656 (Jan. 22, 2020)…………………………………13, 14, 15, 16

*Imbler v. Pachtman,*
   424 U.S. 409 (1976)……………………………………………..…………......11

*Irish Lesbian & Gay Org. v. Giuliani,*
   143 F.3d 638 (2d Cir. 1998)…………………………………………………..6

*Isaac v. City of New York,* No. 16 Civ. 4729 (KAM),
   2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6, 2018)……………………………23-24

*Javanovic v. City of New York,* No. 04 Civ. 8437 (PAC),
   2006 U.S. Dist. LEXIS 59165 (S.D.N.Y. Aug. 17, 2006)…………………………….....19

*Johnson v. Mississippi,*
   486 U.S. 578, 585 (1988)…………………………………………………......16

*Johnson v. Rowley,*
   569 F.3d 40 (2d Cir. 2009)……………………………………….…………....6

*Kerman v. City of New York*,
   374 F.3d 93 (2d Cir. 2004)................................................................27

*Lanning v. City of Glen Falls*,
   908 F.3d 19 (2d Cir. 2018)..........................................................14, 15

*Manganiello v. City of New York*,
   612 F.3d 149 (2d Cir. 2010)........................................................13, 27

*McCrary v. County of Nassau*,
   493 F.Supp.2d 581 (E.D.N.Y. 2007).................................................22

*McDonough v. Smith*,
   139 S. Ct. 2149, 2155 (2019)...........................................................19

*Myers v. County of Nassau*,
   825 F. Supp. 2d 359 (E.D.N.Y. 2011) ..............................................17

*Pangburn v. Culbertson*,
   200 F.3d 65 (2d Cir. 1999) ..............................................................21

*Patel v. Contemporary Classics of Beverly Hills*,
   259 F.3d 123 (2d Cir. 2001)...............................................................6

*Powers v. Coe*,
   728 F.2d 97 (2d Cir. 1984)...............................................................19

*Ricciuti v. N.Y.C. Transit Authority*,
   124 F.3d 123 (2d Cir. 1997).....................................................13, 17, 27

*Romani v. Sanofi S.A.*,
   899 F.2d 195 (2d Cir. 1990)..............................................................28

*Rounseville v. Zahl*,
   13 F.3d 625 (2d Cir. 1994)...............................................................21

*Sanabria v. Tezlof*, No. 11 Civ. 6578 (NSR),
   2016 U.S. Dist. LEXIS 107104 (S.D.N.Y. Aug. 12, 2016).................20-21

*Savino v. City of New York*,
   331 F.3d 63 (2d Cir. 2003)...............................................................13

*Smith v. Garretto*,
   147 F.3d 91 (2d Cir. 1998)..................................................................9

*Tankleff v. County of Suffolk*, 09 Civ. 1207 (JS)(WDW),
    2010 U.S. Dist. LEXIS 135020 (E.D.N.Y.  Dec. 21, 2010)……………...…………………..15

*Terebesi v. Torreso*,
    764 F.3d 217 (2d Cir. 2014)………………………………………...………...…………27

*United States v. Agurs*,
    427 U.S. 97 (1976)…………………………………………………...………………13

*United States v. Green*,
    480 F.3d 627 (2d Cir. 2007)…………………………………………………………15

*Vantone Grp, Let Liability Co. v. Yangpu NGT Indus. Co. Ltd.*, No 13 Civ. 7639 (LTS)(MHD),
    2015 U.S. Dist. LEXIS 86653 (S.D.N.Y. July 2, 2015)…………………………………19-20

*Walker v. City of New York*,
    974 F.2d 293 (2d Cir. 1992)………………...…………………………………...…..26

*Warney v. County of Monroe*,
    587 F.3d 113 (2d Cir. 2009)……………………………...…………………….10, 11

*Ying Li v. City of New York*,
    246 F. Supp. 3d 578 (E.D.N.Y. 2017)………………………………..…...………..22, 27

*Zahra v. Town of Southold*,
    48 F.3d 674 (2d Cir. 1995)……………………………………...……………….22

## PRELIMINARY STATEMENT

The detailed allegations and the legal theories stated in Plaintiff's Amended Complaint ("Am. Comp.") are not subject to dismissal for failure to state a claim or any of the other reasons advanced by Defendants. The Am. Comp. alleges facts from which a jury can reasonably conclude that the Individual Defendants caused Plaintiff Calvin Buari ("Plaintiff") to be maliciously prosecuted, violated his right to a fair trial, failed to intercede in the violation of his rights, and conspired to deprive Plaintiff of his rights, and that the City defendants maintained unconstitutional customs, practices, and policies that condoned and encouraged the Individual Defendants' misconduct. Defendants attempt to dismiss Plaintiff's well-pled complaint by ignoring and misstating his allegations and by improperly arguing that the Am. Comp. fails to prove Plaintiff's case when his burden is only to plausibly allege those claims. As reviewed below, the facts are painstakingly detailed in the Am. Comp. and can be expected to be strengthened and expanded through discovery proceedings.  For the reasons stated herein, Defendants' motion should be denied in its entirety.

## STATEMENT OF FACTS

On September 10, 1992, at approximately 9:00 p.m., Dwight Robinson shot and killed Salhaddin and Elijah Harris while they were sitting in a parked car on the intersection of 213th Street and Bronxwood Avenue, Bronx, New York. (¶¶38-53[1]) Plaintiff was with a friend, Jay Parris, and a woman that he had just lent his lighter to at least half a block away when the murder occurred. (*Id.*) Plaintiff is completely innocent of the Harris brothers' homicides. (¶359)

The Harris brothers' homicides occurred when the crack-cocaine epidemic was causing a record-setting number of murders in the 47th Precinct. (¶6) Detectives from the 47th Precinct were

---

[1] For brevity, the Am. Compl. is cited to by the "¶" symbol, followed by the relevant paragraph number.

under great pressure to solve this crime but could not come up with any leads. (*Id.*) On January 29, 1993, police arrested Alrick Griffiths, a known drug dealer who operated on the corner where the Harris brothers had been murdered. (¶¶63-64) Defendant Detective Dietz suspected Mr. Griffiths was connected to the Harris brothers' homicides but was unable to link him to that crime. (¶66) He, therefore, attempted to coerce Mr. Griffiths into implicating someone else for that crime. (¶67)

Detectives at the 47th Precinct had animus towards Plaintiff because of his refusal to cooperate with them. (¶¶71-74) Knowing that Mr. Buari lived near where Mr. Griffiths sold drugs and where the Harris brothers had been murdered, Detective Dietz and other detectives coerced Mr. Griffiths to falsely implicate Plaintiff in the Harris brothers' homicides. (¶¶75-77) Detective Dietz knew that the statements that had been coerced from Mr. Griffiths were untrue and did not constitute probable cause to arrest Plaintiff for the Harris brothers' homicides. (¶80) Nonetheless, he caused Mr. Buari to be arrested for that crime. (¶78)

The Bronx County District Attorney's Office ("BCDAO") prosecuted Plaintiff fully knowing that the only evidence against him, the statements that detectives had coerced from Mr. Griffiths, were untrue. (¶82) The BCDAO used this false evidence to cause Plaintiff's indictment for the Harris brothers' homicides. (¶¶82-86) Mr. Griffiths was then released from police custody and fled the country to avoid further coercion by the police. (¶87) The prosecution knew that their case against Plaintiff could not go forward without Mr. Griffith's false testimony and offered Plaintiff a plea bargain of three years imprisonment for the double homicide charge. (¶¶91-92) Plaintiff did not accept the plea bargain because he was innocent of the homicides. (¶93)

In June 1995, almost three years after the Harris brothers' homicides, drug violence in the 47th Precinct intensified as rival drug dealers vied for control of the territory. (¶¶95-96) During this time, Defendants Price, Gottwin, Neenan, and Fortune met with Dwight Robinson, to discuss the

drug violence taking place in the precinct. (¶¶95-103) The detectives knew that Mr. Robinson was vying for control of the drug trade in their precinct and that Mr. Griffiths' girlfriend had identified him as the murderer of the Harris brothers. (¶¶104-107) The detectives were also aware that Mr. Robinson had animus towards Plaintiff and was suspected of an attempt on his life. (¶106) The detectives knew that Plaintiff was about to go on trial for the Harris brothers' homicides, but that there was no case without Griffith's false testimony. (¶105) The detectives offered Mr. Robinson freedom to operate his drug trade without "heat" from the police in exchange for his help in stemming drug violence and his agreement to provide evidence to convict Plaintiff for the Harris brothers' homicides. (¶¶108-109) Mr. Robinson accepted the detectives' proposal. (¶110)

The detectives' arrangement with Mr. Robinson was made known to ADA Karen, who was prosecuting the Harris brothers' homicides. (¶111) The detectives, together with ADA Karen and Mr. Robinson, then set about coercing Mr. Robinson's drug dealing associates to also falsely testify against Plaintiff. (¶¶112-120) The detectives and ADA Karen understood that their efforts to secure false testimony against Plaintiff were unlawful. (¶116) At Plaintiff's pre-trial hearings, Defendants Price, Fortune, and Neenan falsely testified how Plaintiff became a suspect for the Harrris brothers' homicides. (¶¶121-123) These detectives did not advise the Court of the unlawful arrangements and coercion that had been utilized to secure false testimony from Mr. Robinson and his drug dealing associates against Plaintiff. (¶125)

Plaintiff was tried for the Harris brothers' homicides in October 1995. (¶127) The only evidence connecting him to the homicides was the false evidence the detectives and ADA Karen had unlawfully coerced Mr. Robinson and his drug dealing associates into providing. (¶¶128-137) ADA Karen knowingly allowed these witnesses to testify falsely at trial and did not disclose the unlawful deals he and the detectives had made to secure their testimony. (*Id.*) As a result, Plaintiff

was convicted of two counts of murder in the second degree and sentenced to consecutive terms of imprisonment of twenty-five years to life. (¶138)

In 2003, Plaintiff moved pursuant to New York Criminal Procedure Law § 440.10 to vacate his conviction based on *Brady* violations and other grounds. (¶¶144-149) In January 2004, Plaintiff supplemented his motion with newly discovered evidence consisting of affidavits from Mr. Robinson and Kintu Effort. (¶155) Mr. Effort stated that he had been coerced by the prosecutor into falsely testifying against Plaintiff and recanted his trial testimony. (¶146) Mr. Robinson confessed to murdering the Harris brothers. (¶152) Upon learning about this newly discovered evidence, ADA Karen sent out Defendant Investigators Viggiano, Schiffman, and Wall to cause the withdrawal of this recantation testimony by any means possible. (¶156) Viggiano, Schiffman, and Wall used undue coercion and suggestion against Mr. Effort and Mr. Robinson, and their respective families, to cause them to withdraw their recantations. (¶¶157-161)

At Plaintiff's hearing, Mr. Robinson falsely testified that Plaintiff had caused him to provide an affidavit confessing to the Harris brothers' homicides because of threats to him and his family. (¶162) ADA Karen and Investigators Viggiano, Schiffman, and Wall knew this testimony was false, but did not advise the court of their knowledge, and the judge found Mr. Robinson's testimony to be credible. (¶¶153-164) Mr. Effort testified that his original recantation was accurate and that Plaintiff did not murder the Harris brothers, but the judge did not credit his testimony. Plaintiff's 440 motion was denied. (¶164)

Plaintiff subsequently attempted to find new evidence to prove his innocence. (¶¶166-167) With the help of a private investigator and social media campaign, Plaintiff discovered a witness, Kimberlia Clarke, who had witnessed Mr. Robinson execute the Harris brothers. (¶¶168-173) Plaintiff obtained additional exculpatory evidence from Kimberlia's sister, Nakia, who had also

witnessed Mr. Robinson execute the Harris brothers. (¶¶174-178) Plaintiff also succeeded in locating the woman, Caroline Brown, who was with him at the time of the Harris brothers' homicides and who confirmed that Plaintiff did not commit that crime. (¶¶179-186) In October 2015, Plaintiff moved to vacate his conviction based on these newly discovered witnesses. (¶187)

After filing his motion, Plaintiff's counsel was contacted by ADA Coddington who advised him that the BCDAO Conviction Integrity Unity ("CIU") wanted to evaluate his claims. (¶188) The BCDAO CIU performs extra-judicial reviews of post-judgment claims of wrongful conviction. (¶190) ADAs Mignola, Coddington, and Lung requested that Plaintiff put his motion on hold so that they could conduct a fair, impartial, and non-adversarial investigation of his claims, to which Plaintiff agreed. (¶¶188-193) Unbeknownst to Plaintiff at the time, these ADAs actually sought to sabotage his motion and maintain his conviction. (¶192) Towards that end ADAs Mignola, Coddington, and Lung sent out investigators to intimidate Plaintiff's witnesses from testifying. (¶¶194-214) Although ADAs Mignola, Coddington, and Lung were ultimately unsuccessful in intimidating Plaintiff's witnesses from testifying, their unlawful efforts resulted in Plaintiff remaining wrongfully imprisoned for an additional year. (¶¶215-218)

A hearing on Plaintiff's motion to vacate was held in April 2017. (¶219) Plaintiff's case consisted of testimony from Plaintiff, the Clarke sisters, Caroline Brown, and Plaintiff's investigator. (¶220) The BCDAO represented that they were going to call Mr. Robinson as a witness, but they never did. (¶¶222-223) On May 5, 2017, the judge hearing Plaintiff's case vacated Plaintiff's conviction after finding Plaintiff's witnesses credible. (¶225) In a subsequent written decision the judge stated, *inter alia*, that Plaintiff's evidence was "overwhelming," that the BCDAO's treatment of Plaintiff's witnesses was offensive, and noted how the BCDAO's failed to call Mr. Robinson as a witness. (¶235) Despite repeatedly stating an intention to retry Plaintiff's

case, the BCDAO moved to dismiss Plaintiff's indictment on March 21, 2018. (¶¶227-242) The BCDAO's motion stated, "After the People's investigation it is the position that the People will be unable to meet their burden at trial beyond a reasonable doubt." (Cannan Decl., Ex. A, Dismissal on Recommendation[2]) Plaintiff was subsequently issued a Certificate of Disposition stating that the dismissal of the criminal charges against him "is a termination of the criminal action in favor of the accused ... and the accused shall be restored, in contemplation of the law, to the status occupied before the arrest and prosecution" (Cannan Decl., Ex. B, Plaintiff's Certificate of Disposition[3])

As a result of Defendants' unlawful actions, Plaintiff was caused to be wrongfully incarcerated for nearly twenty-one years. (¶268)

## LEGAL STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citing *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir. 1998)). "To survive a Rule 12(c) motion, [a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotation marks omitted). The Court must also accept facts alleged "upon information and belief" "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of

---

[2] The Declaration of Marc A. Cannan submitted herewith is referred to as the "Cannan Decl." The Court may consider the BCDAO's Dismissal on Record as it was incorporated in the Am. Comp. by reference at ¶ 242 and other paragraphs. The Court may also take judicial notice of this document to establish the fact that the document with the stated language was filed in Plaintiff's criminal case. *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2007).
[3] The Court may take judicial notice of Plaintiff's Certificate of Disposition to establish the fact that the document with the stated language was filed in Plaintiff's criminal case. *Global Network Communications*, 458 F.3d at 157.

culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008).

Based on this view of the allegations, if there are "enough facts to state a claim to relief that is plausible on its face," the Court must deny the motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Arista Records*, 604 F.3d at 120. A claim is plausible if it contains enough factual allegations, taken as true, "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The motion to dismiss standard here is not a "heightened pleading standard." *Id.* at 569 n.14.

## ARGUMENT

## I.     DEFENDANTS' STATEMENT OF FACTS SHOULD BE STRICKEN

Defendants Statement of Facts is patently improper and should be disregarded by the Court. Instead of laying out facts, Defendants' improperly argue that Plaintiff has not proven his case. *See, e.g.,* Defendants' Memorandum of Law in Support of Dismissing Plaintiff's First Amended Complaint ("Def. Mem.") at 6 (claiming Plaintiff does not articulate threats made to coerce witness). However, Plaintiff is not required to prove his case. He simply must plead enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. Furthermore, "the court is required to proceed on the assumption that all the factual allegations in the complaint are true." *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

Defendants also improperly assert facts not alleged in the Am. Comp. For example, Defendants' Statement of Facts states "At the time of the shooting, plaintiff was a known drug dealer…." (Def. Mem. at 1). The sources Defendants cite for this statement do not support the allegation. Nowhere in the Am. Comp. does Plaintiff allege that he was a drug dealer known to the

police. Defendants plainly attempt to improperly prejudice the Court against Plaintiff.

Defendants also improperly rely on materials outside the Am. Comp., (*see, e.g.*, Def. Mem. at 5 fn 8), by using court decisions to argue facts not alleged by Plaintiff. (*See, e.g., id.* at 6 (using prior 440 decision to argue that police and prosecutors did not know Dwight Robinson murdered the Harris brothers)). This is entirely inappropriate on a motion to dismiss. "A court may take judicial notice of documents filed in another court *not for the truth of the matters asserted in other litigation*, but rather to establish the fact of such litigation and related filings." *Global Network Communications*, 458 F.3d at 157 (emphasis added).

Because Defendants' Statement of Facts is of no help to the Court and requires the Court to sift through improper argument and purported evidence in order to determine what basis Defendants have, if any, for the relief they request, their Statement of Facts should be stricken.

## II.     THE BCDAO DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY

Defendants argue that the BCDAO Defendants and their investigators are "shielded by absolute immunity" because "plaintiff fails to allege that any conduct of the BCDAO Defendants that is not intimately associated with the judicial phase of the criminal process" (Def. Mem. at 23). Defendants' argument fails because it is conclusory and does not address the full range of misconduct by the BCDAO Defendants alleged in the Am. Comp.

In determining whether a party can avail herself of an absolute immunity defense, "[the courts] apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *IIill v. City of New York*, 45 F.3d 653, 660 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Absolute immunity shields a prosecutor for conduct that is "'intimately associated with the judicial phase of the criminal process," *Fielding v. Tollaksen*, 257 Fed. Appx. 400, 401 (2d Cir. 2007) (citation omitted), and

"which occur[s] in the course of his role as advocate for the State." *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir. 1998) (citation and quotation marks omitted). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed,* 500 U.S. 478, 486 (1991). The ultimate question to be answered is "whether the prosecutors have carried their burden of establishing that they were functioning as advocates when they engaged in the challenged conduct." *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir. 1996) (internal quotation marks omitted). Although it is important to determine if absolute immunity attaches at the earliest practical stage, "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill,* 45 F.3d at 663.

### A. Defendants Have Not Met Their Burden of Proving the ADA Defendants Are Entitled to Absolute Immunity

Here, the Court should find that Defendants have failed to meet their burden of showing that the BCDAO Defendants are entitled to absolute immunity. Defendants' assertion that Plaintiff has failed to allege any conduct by the BCDAO that is not intimately connected with the judicial phase of the criminal process is purely conclusory and Defendants fail to cite facts in the Am. Comp. that would support the conclusion. Indeed, the only facts Defendants cite in support of their assertion are the allegations that ADA Kallen and detectives coerced Kintu Effort to agree to testify against Plaintiff (Def. Mem. at 11 (citing Am. Compl. ¶¶129-134)). Accordingly, this Court should find that the BCDAO Defendants have failed to demonstrate entitlement to absolute immunity as a matter of law and deny Defendants' motion.

### B.  Defendants Have Not Met Their Burden of Proving the Conviction Integrity Unit ADA Defendants Are Entitled to Absolute Immunity

Absolute immunity may shield work performed by prosecutors "during a post-conviction collateral attack, at least insofar as the challenged actions are part of the prosecutor's role as an advocate for the state." *Warney v. County of Monroe*, 587 F.3d 113, 123 (2d Cir. 2009). The "proper and useful focus" for ascertaining the role being served by a prosecutor "is whether there are pending court proceedings integral to the criminal justice system." *Id.* at 124. A prosecutor performing acts not "intimately associated with the judicial phase of the criminal process," such as investigatory or administrative acts performed outside of a judicial proceeding, "are not entitled to absolute immunity." *Id.* at 121 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

In *Warney*, the Second Circuit upheld a lower court's finding that prosecutors were entitled to absolute immunity for failure to promptly disclose exculpatory DNA test results while a criminal defendant was appealing the denial of his 440 motion. *Id.* at 118-120. Key to the Second Circuit's finding was the fact that the prosecutors' allegedly improper acts had been performed in connection with the criminal defendant's post-conviction proceedings. *Id.* at 123-124. Because the purported misconduct was performed during the judicial phase of a post-trial challenge to an underlying conviction, the Second Circuit held the prosecutors were performing an advocatory function that entitled them to absolute immunity. *Id.* at 124-125.

Here, the Court should find that the CIU Defendants are not entitled to absolute immunity. The CIU Defendants' misconduct was not conducted as part of an adversarial post-trial challenge to Plaintiff's conviction. Rather, it was conducted during a purportedly non-adversarial investigative review of Plaintiff's case (¶188-193). Crucially, the CIU's actions were performed extra-judicially. *Id.* Indeed, the CIU specifically requested that Plaintiff hold his 440 motion in abeyance, which Plaintiff agreed to do, so that they could conduct their investigative review of his

10

case extra-judicially. *Id.* Thus, the CIU Defendants have no basis to claim that they were functioning as advocates for the State when they improperly interfered with Plaintiff's witnesses. Accordingly, the Court should find that they are not entitled to absolute immunity.

The Court should also find that the CIU Defendants are not entitled to absolute immunity because the interests supporting absolute immunity for traditional prosecutors does not apply. The Court in *Imbler v. Pachtman* declined to accord prosecutors only qualified immunity because, among other things, suits against prosecutors for initiating and conducting would "divert prosecutors attention and energy away from their important duty of enforcing the criminal law" and "potential liability 'would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Burns v. Reed*, 500 U.S. 478, 485-86 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 425, 427-28 (1976)). Those concerns are not present here because the CIU is a particularized unit that exercises its own discretion in performing extra-judicial reviews of convictions. They do not enforce the criminal law and are not essential to the regular functioning of the criminal justice system. Indeed, they are a recent invention. Because denying the CIU Defendants absolute immunity will not interfere with any conduct intimately related to the judicial process, their motion should be denied.

The CIU Defendants also do not meet their burden of showing entitlement to absolute immunity. They assert that Plaintiff's claim against the CIU Defendants "relate exclusively to their roles as advocates….," but they do not support their assertion with proper citations to allegations in the complaint (*see* Def. Mem at 11-12 (citing Am. Comp. ¶¶259, 275, 280)). Their reliance on *Friedman v. Rice* is also misguided (Def. Mem. at 11). In *Friedman*, the conviction integrity review was conducted in response to a request by the Second Circuit who, in affirming the dismissal of plaintiff's habeas petition, had stated that the "record here suggests 'a reasonable

likelihood' that [plaintiff] was wrongfully convicted ... [and] [o]nly a reinvestigation of the underlying case or the development of a complete record in a collateral proceeding can provide a basis for determining whether petitioner's conviction should be set aside." 5 N.Y.S.3d 816, 820 (Sup. Ct., Nassau Cnty 2015) (quoting *Friedman v. Rehal*, 618 F.3d 142, 159-160 (2d Cir. 2010). The Second Circuit additionally noted their "hope" that the Nassau District Attorney would conduct the type of reinvestigation suggested in Comment (6B) to Rule 3.8 of the Rules of Professional Conduct (*id.* at 820). The Nassau County District Attorney's Office complied with the Second Circuit's request (*id.*). Thus, the prosecutors in *Friedman* were functioning as advocates in in a pending post-trial proceeding.

Unlike the prosecutors in *Friedman*, the CIU Defendants here did not reinvestigate Plaintiff's case at the request of a higher court or in connection with an adversarial judicial proceeding. Nor was the reinvestigation conducted pursuant to the Rules of Professional Conduct. The CIU Defendants chose to "reinvestigate" Plaintiff's case on their own initiative (¶210). Furthermore, the BCDAO's "reinvestigation" of Plaintiff's case was extra-judicial, (¶212), and non-adversarial (¶213). Therefore, the CIU Defendants cannot claim they were acting as advocates when they violated Plaintiff's rights. Absolute immunity does not apply to them.

Contrary to Defendants' assertions, Plaintiff's supervisory liability claim against ADA Clark and Mignola is also viable because they actively participated in attempting to sabotage Plaintiff's motion. (¶¶188-218, 228-232296-302)

### C. Defendants Have Not Met Their Burden of Proving the BCDAO Investigators Are Entitled to Absolute Immunity

Because the Court should find that the CIU Defendants have not met their burden of proving entitlement to absolute immunity, the Court should find that the BCDAO Investigator that assisted the CIU Defendants are also not protected by absolute immunity.

## III.   PLAINTIFF'S MALICIOUS PROSECUTION CLAIM IS VIABLE

### A.   Plaintiff Has Rebutted the Presumption of Probable Cause Created by the Grand Jury Indictment

"The existence of probable cause is a complete defense to a claim of malicious prosecution." *Hincapie v. City of New York*, No. 18 Civ. 3432 (PAC), 2020 U.S. Dist. LEXIS 10656, at *17 (Jan. 22, 2020) (citing *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010)). "While a grand jury indictment creates a presumption of probable cause, it is rebuttable 'by evidence that the indictment was the product of fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* (quoting *Colon v. City of New York*, 60 N.Y.2d 78 (1983)). "Where there is some suggestion in police records that, as to a fact crucial to probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome." *Id.* (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003)). "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *Id.* at 18 (citing *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)).

Defendants rely on *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003), to argue that Plaintiff has failed to offer sufficient evidence to rebut the presumption of probable cause (Def. Mem. at 13-15). The Court should reject this argument because *Savino* decided a motion for summary judgment. "The relevant burden is not the same." *Hincapie*, 2020 U.S. Dist. LEXIS 10656 at *18. At the motion to dismiss stage, "plaintiff is not required to prove that the defendants lied before the grand jury or in their discussions with [] prosecutors; instead, he need only provide

13

sufficiently specific factual allegations regarding the nature and content of their lies in order to survive defendants' 12(b)(6) motion." *Demosthene v. City of New York*, No. 18 Civ. 1358 (ARR)(PK), 2019 U.S. Dist. LEXIS 4901, at *13 (E.D.N.Y. Jan. 10, 2019); *see Hincapie*, 2020 U.S. Dist. LEXIS 10656 at *18 (burden satisfied by allegations defendants forced plaintiff to falsely confess, prepared false police report, and offered false testimony to grand jury).

Here, Plaintiff has sufficiently alleged that his indictment by the grand jury was grounded in evidence fabricated by Detectives Dietz and other 47th Precinct Detectives. The detectives were under great pressure to solve the Harris brothers' homicides (¶¶5-6). The detectives knew there was no probable cause, or even reasonable suspicion to believe Plaintiff had any connection with the Harris brothers' murder (*Id.*). Nonetheless, to close the case, and out of animus to Plaintiff, they coerced Alrick Griffiths to falsely implicate Plaintiff with that crime (¶¶7, 71-76, 80, 275(a)). They then arrested Plaintiff and forwarded the false, inculpatory evidence they had fabricated to prosecutors who used it to secure Plaintiff's indictment (¶¶80-85, 275). These non-conclusory allegations overcome the presumption of probable cause.

**B.    The Prosecution Was Favorably Terminated**

Defendants erroneously contend that Plaintiff's malicious prosecution claim fails because he cannot show that the state court proceedings ended in his favor.

In order for there to be a favorable termination, federal law requires that a prosecution terminates in a manner indicating that the person was not guilty of the offense charged rather than "on any number of procedural or jurisdictional grounds." *Hincapie*, 2020 U.S. Dist. LEXIS 10656 at *13 (citing *Lanning v. City of Glen Falls*, 908 F.3d 19, 28 (2d Cir. 2018)). No single type of disposition is necessary or sufficient, but the termination must be "measured in objective terms by examining the totality of the circumstances." *Id.* Thus, in *Lanning v. City of Glen Falls*, the Second

14

Circuit found a plaintiff's "vague allegations" of favorable termination insufficient. The Court noted that plaintiff's charges were dismissed without any indication of how or on what grounds other than that the dismissal was based at least in part on lack of jurisdiction. *Id.* Furthermore, the state court had explicitly stated that there was no "determination of the merits" upon dismissal. *Id.*

Here, by contrast, Plaintiffs conviction was vacated and his indictment was dismissed after he had been imprisoned for nearly twenty-one years in prison (¶16). The vacatur of the conviction and dismissal of the indictment were the result of newly discovered exculpatory evidence, which included two witnesses who positively identified Dwight Robinson as the murderer of the Harris brothers, (¶¶168-178), and an alibi witness who was with Plaintiff at the time the Harris brothers were killed (¶¶179-184). The state court vacatur was based on the merits and found Plaintiff had met his burden of establishing, by a preponderance of the evidence, that his newly discovered exculpatory evidence would have produced a more favorable verdict at trial (Scheiner Decl., Ex. A at 21). The judge stated his decision was based "on the overwhelming credible testimony" of these three witnesses and opined that Plaintiff "should be allowed to argue that Dwight Robinson is actually responsible for the [Harris brothers'] homicides." (*Id.* at 24). These allegations sufficiently establish a favorable termination to withstand a motion to dismiss. *Tankleff v. County of Suffolk*, 09 Civ. 1207 (JS)(WDW), 2010 U.S. Dist. LEXIS 135020, at *19-20 (E.D.N.Y. Dec. 21, 2010) (conviction vacated on newly discovered evidence pointing to someone else as perpetrator of murders sufficiently constitutes favorable termination to survive motion to dismiss).

Plaintiff has additionally provided his Certificate of Disposition, which "constitutes presumptive evidence of a favorable termination." *Hincapie*, 2020 U.S. Dist. LEXIS 10656 at *15 (citing *United States v. Green*, 480 F.3d 627, 632 (2d Cir. 2007). Plaintiff's Certificate of Disposition states, "the accused shall be restored, in contemplation of the law, to the status

15

occupied before the arrest and prosecution." (Cannan Decl. Ex. B at 1) "The status occupied before Plaintiff's arrest and prosecution is innocence." *Id.* (citing *Johnson v. Mississippi*, 486 U.S. 578, 585 (1988).

Further, the totality of circumstances surrounding the dismissal indicate innocence. The BCDAO decided not to retry Plaintiff because they did not believe they could prove their case. Cannan Decl., Ex. A at ¶15 ("After the People's investigation it is the position that the People will be unable to meet their burden at trial beyond a reasonable doubt"). *See Hincapie*, 2020 U.S. Dist. LEXIS 10656 at *15 (holding the Plaintiff adequately pled favorable termination where the prosecutors did not believe they could prove the case) (collecting cases)). The Am. Comp. further alleges significant weaknesses in the case against Plaintiff, including the "overwhelmingly" credible testimony of newly discovered witnesses which exonerated Plaintiff, the inability of the prosecution to put on a case, the problematic nature of Dwight Robinson's initial coerced confession (¶¶230-242). Plaintiff has sufficiently alleged a favorable termination.

Defendants argue that Plaintiff's case was not terminated in his favor because he did not prove "actual innocence." (Def. Mem. at16). "That argument is wrong, and Defendants cite no support for that argument." *Hincapie*, 2020 U.S. Dist. LEXIS 10656 at *16 (rejecting City's position that there was no favorable termination where plaintiff failed to prove actual innocence). Actual innocence is established by a showing of clear and convincing evidence and is notoriously difficult to prove. *Id.* at *16 n. 4. This is a much higher burden than showing "the prosecution terminated in some manner indicating that the person was not guilty of the offense charged" (quoting *id.* at *13). Defendants' argument fails.

Because Plaintiff has sufficiently alleged facts to meet the strict *Lanning* standard for determining favorable termination under federal law, he certainly meets the less strict New York

state law standard that only requires a showing that "the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001). Accordingly, Defendants motion should be denied.

## IV.    PLAINTIFF HAS ALLEGED A PLAUSIBLE FAIR TRIAL CLAIM

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278 (2d Cir. 2016). As a rule, "[a] plaintiff establishes a denial of fair trial claim when a police officer (1) 'creates false information likely to influence a jury's decision,' (2) 'forwards that information to prosecutors,' and (3) the plaintiff is deprived of [his] liberty as a result." *Buie v. City of New York*, No. 12 Civ. 4390(RJD)(CLP), 2015 U.S. Dist. LEXIS 147642, at *9 (E.D.N.Y. Oct. 30, 2015) (quoting *Ricciuti*, 124 F.3d at 130)).

### A.    Plaintiff Plausibly Alleges Defendants Knowingly Coerced False Evidence to Cause Plaintiff's Indictment and Conviction

Defendants do not dispute that false information was created and forwarded to prosecutors that resulted in Plaintiff's imprisonment. Instead, they argue that plaintiff has failed to show "how defendants would have known that the [false information] was false." Def. Mem. at 18. This argument fails because it improperly relies on summary judgment decisions to assert that allegations that fabricated information was coerced requires proof of coercion. Def. Mem. at 17-18 (citing *Myers v. County of Nassau*, 825 F. Supp. 2d 359, 369 (E.D.N.Y. 2011) and *Brown v. City of New York*, No. 16 Civ. 1919 (ALC), 2018 U.S. Dist. LEXIS 135478, at *31 (S.D.N.Y. Aug. 10, 2018)). This is not a proper burden on a motion to dismiss. A court at the motion to dismiss stage is "not engaged in an effort to determine the true facts." *Doe. v. Columbia Univ.*, 831 F.3d

17

46, 48 (2d Cir. 2016).

Here, the Am. Comp. sufficiently alleges that Defendants knowingly fabricated and coerced false evidence to deprive Plaintiff of his liberty. Defendants Dietz, Tracy and other detectives from the 47th Precinct coerced false testimony from Alrick Griffiths to implicate Plaintiff in the Harris brothers' homicides (¶76). The detectives knew Mr. Griffiths' testimony was false and did not constitute probable cause to arrest Plaintiff (¶80). Despite this knowledge, the detectives arrested Plaintiff for the Harris brothers' homicides and forwarded Mr. Griffiths' false testimony to prosecutors, who used it to secure Plaintiff's indictment (¶¶82-85).

When Mr. Griffiths fled the country to avoid further police coercion, Defendants Price, Gottwin, Neenan, Fortune and other detectives from the 47th Precinct made an unlawful deal with Dwight Robinson that allowed Robinson to operate his illegal drug trade without "heat" from the police in exchange for his false testimony that Plaintiff murdered the Harris brothers (¶¶108-110). Defendants Price, Fortune, and Neenan also fabricated false testimony to explain Mr. Robinson's cooperation with the police and further portray Plaintiff as a murderer, (¶¶121-124), and coerced Mr. Robinson's drug-dealing associates to falsely testify against Plaintiff (¶¶112-120). The false testimony coerced by these detectives, as well as their own false testimony, was used at Plaintiff's pre-trial hearing and criminal trial to cause Plaintiff's conviction (¶¶121-138).

Additional evidence of Defendants intentionally coercing false testimony to continue Plaintiff's unlawful imprisonment includes allegations that Defendants Karen, Viggiano, Schiffman, and Wall coerced Robinson and Effort to falsely recant their confessions that Plaintiff had not murdered the Harris brothers, (¶¶144-165), and allegations that Defendants Mignola, Coddington, and Lung caused investigators to intimidate witnesses from giving testimony exonerating Plaintiff and implicating Robinson for the Harris brothers' homicides. (¶¶188-217).

Plaintiff is entitled to the opportunity to show that his constitutional right to a fair trial was violated by Defendants coercing witnesses to fabricate false statements implicating him in the Harris brothers' homicides. *See Javanovic v. City of New York*, No. 04 Civ. 8437 (PAC), 2006 U.S. Dist. LEXIS 59165, at *41-42 (S.D.N.Y. Aug. 17, 2006) (citing *Powers v. Coe*, 728 F.2d 97, 105-106 (2d Cir. 1984). Accordingly, the Court should find that Plaintiff has sufficiently alleged that Defendants fabricated evidence by knowingly coercing false testimony from witnesses.

### B.      Plaintiff Has Adequately Pled Favorable Termination

Defendants argue that the recent Supreme Court decision in *McDonough v. Smith* requires the Court to dismiss Plaintiff's fair trial claim because he did not obtain a favorable termination (Def. Mem. at 19 (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019)). Plaintiff disputes Defendants' interpretation of *McDonough*, however the Court need not decide this particular issue because Plaintiff has sufficiently alleged a favorable termination (*see* Point III(B) *supra*).

### C.      Plaintiff Does Not Rely on Group Pleading

Defendants argue that Plaintiffs have violated Fed. R. Civ. P. 8(a) by improperly lumping all Defendants together in his fair trial claim without articulating what acts are attributable to each Defendant. Defendants' argument is meritless. Fed. R. Civ. P. 8(a) "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). The complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Id.* (internal citation and quotation omitted). Here, the Am. Comp. gives each Defendant adequate and fair notice of the nature of Plaintiff's fair trial claims against them. *See* Point IV(A) *supra* (identifying the incidents of evidence fabrication alleged in the complaint and specifying which Defendants were involved in each of those fabrications). "[A]t the very least, the [Am. Comp.] gives the defendants notice of

the claims asserted against them ... and, therefore, the Moving Defendants can readily identify the nature of the case." *Vantone Grp, Let Liability Co. v. Yangpu NGT Indus. Co. Ltd.*, No 13 Civ. 7639 (LTS)(MHD), 2015 U.S. Dist. LEXIS 86653, at *13 (S.D.N.Y. July 2, 2015).

**D.    Plaintiff's Failure to Intervene Claim Based on His Fair Trial Claim is Viable**

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994). Liability may attach where an officer fails to intervene but observes or has reason to know that a constitutional violation has been committed by a law enforcement official. *Id.* For an officer to be held liable for failing to intervene, he or she must have had a realistic opportunity to intervene and prevent the violation at issue from happening. *Id.* (citation omitted). Additionally, "there can be no failure to intervene claim without a primary constitutional violation." *Forney v. Forney,* 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015).

Defendants argue that Plaintiff's failure to intervene claim must be dismissed because Plaintiff does not have a viable fair trial claim (Def. Mem. at 20). Defendants are wrong. Plaintiff has adequately pleaded constitutional violations. *See* Points III, IV(A), IV(B), IV(C) *supra*.; *see also* Point V *infra*).

Defendants additionally argue Plaintiff's failure to intervene claim fails because Plaintiff "has not distinguished which defendants were direct participants in any constitutional violation and which failed to intervene" (Def. Mem. at 20 n. 17). Defendants' argument is meritless. Alleging that a constitutional violation occurred in the presence of several officers is sufficient to maintain a fair trial claim. *See Sanabria v. Tezlof*, No. 11 Civ. 6578 (NSR), 2016 U.S. Dist. LEXIS 107104, at *18 (S.D.N.Y. Aug. 12, 2016). Allegations that multiple officers both participated in a constitutional violation and failed to intervene is immaterial. *Id.* The determination of who was

specifically participated in the constitutional violation, and, hence, is not liable for failure to intervene, will be determined in discovery. *Id.* Plaintiff's failure to intervene claim must stand.

## V.   PLAINTIFF'S HAS ADEQUATELY PLEADED HIS CONSPIRACY CLAIM

In a § 1983 conspiracy claim, the Plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002). To establish a conspiracy, a plaintiff must provide evidence which one could reasonably infer that the accused parties had a "meeting of the minds." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). "A plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, . . . but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (report and recommendation), *rej'd in part on other grounds*, *Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (citations and quotations omitted). The Second Circuit has recognized that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial . . . evidence." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)).

Defendants argue that Plaintiff's conspiracy claim must be dismissed because Plaintiff does not have a viable fair trial claim (Def. Mem. at 21). Defendants are wrong. Plaintiff has adequately pleaded constitutional violations. *See* Points III, IV *supra*).

Contrary to Defendants' position (Def. Mem. at 21), Plaintiff has also plausibly alleged a conspiracy among the NYPD and BCDAO Defendants to falsely arrest and wrongfully convict him, and, later, to keep him falsely imprisoned. Defendants Dietz, Tracy, Price, Gottwin, Neenan, Fortune, and other detectives from the 47th Precinct, along with ADA Karen, agreed with Dwight

Robinsons and his drug-dealing associates that, *inter alia*,  Mr. Robinson and his associates would be allowed to operate their drug trade in the 47th Precinct without "heat" from the police in exchange for their false testimony that Plaintiff murdered the Harris brothers (¶¶ 95-120). These parties then acted to fabricate statements to falsely incriminate Plaintiff and subsequently presented these fabricated statements at Plaintiff's pre-trial hearing and trial (¶¶121-138). They did this despite the fact that they knew Plaintiff was innocent of murdering the Harris brothers (¶¶290-295). These overt acts were taken in furtherance of a conspiracy and inflicted an injury on Plaintiff. Accordingly, the Court should find Plaintiff has sufficiently alleged his conspiracy claim.

## VI.    PLAINTIFF HAS STATED A PLAUSIBLE MUNICIPAL LIABILITY CLAIM

"For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege sufficient factual detail and not mere boilerplate allegations that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 636 (E.D.N.Y. 2017) (citation and quotation omitted). Plaintiff must specifically plead: "(1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *McCrary v. County of Nassau*, 493 F.Supp.2d 581, 588 (E.D.N.Y. 2007) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)). A plaintiff can satisfy the policy requirement by alleging either "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705

F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

Here, Defendants argue that the Am. Comp. fails to state a *Monell* claim because Plaintiff has not established a constitutional violation; he fails to allege an official policy or practice; and because he fails to sufficiently allege a failure to train." *See* Def. Mem. at 23-26. Each of Defendants' arguments are meritless.

### A.     Plaintiff Plausibly Alleges an Underlying Constitutional Violation

As discussed *supra* at Points III, IV, and V, *supra*, Plaintiff has sufficiently alleged that the NYPD and BCDAO Defendants caused Plaintiff to be maliciously prosecuted, and that they conspired to and did cause his false imprisonment by coercing false testimony from witnesses which they caused to be presented at the Grand Jury hearing Mr. Buari's case, Mr. Buari's pre-trial hearings, and at Mr. Buari's trial. Thus, Plaintiff has satisfied this element of his *Monell* claim.

### B.     Plaintiff Sufficiently Alleges an Official Policy and Practice

The Am. Comp. sets forth extensive factual allegations that support a plausible inference that the NYPD an BCDAO had a policy, custom, and practice of deliberate indifference to their employees' constitutional violations (¶¶303-345). These violations included fabrication of false evidence, coercion of witnesses, subornation of perjury, and suppression of *Brady* material (*id.*).

With regard to allegations against the NYPD, Defendants focus on Plaintiff's reliance on the findings of the Mollen Commission and assert that "courts routinely dismiss *Monell* claims relying on such reports" (Def. Mem. at 24). Defendants' argument misses the mark. Courts dismiss *Monell* claims that rely on reports that are not "sufficiently connected to the specific facts" of plaintiff's claim. *Isaac v. City of New York*, No. 16 Civ. 4729 (KAM), 2018 U.S. Dist. LEXIS 132995, at *51-52 (E.D.N.Y. Aug. 6, 2018) (collecting cases). Thus, the court in *Isaac v. City of New York* found plaintiff's reliance on the Mollen Report "unavailing" to support his *Monell* claim

alleging that his 2008 arrest was based on a practice of making false arrests to meet arrest quotas. *Id.* The Mollen Report was published in 1994 and did not consider arrest quotas as a component of police corruption. *Id.* at *3, *48-52. In *Collins v. City of New York*, however,the court found reliance on the Mollen Report was sufficient to deny the City's motion to dismiss his *Monell* claim. 923 F. Supp. 2d 462, 478-479 (E.D.N.Y. 2013). Plaintiff's 1994 arrest and prosecution was contemporaneous with the Mollen Report's investigation and involved the same type of misconduct reported in that investigation. *See id.* at 466, 478-479 (Mollen Report's findings "make it plausible that the type of misconduct that led to Collins's arrest and prosecution was endemic within the NYPD").

Here, the Court should deny Defendants' motion to dismiss Plaintiff's *Monell* claim against the NYPD for the same reasons the court denied the City's motion in *Collins*. Similar to *Collins*, Plaintiff's 1993 arrest and prosecution is contemporaneous with the Mollen Report's investigation and findings. Also similar to *Collins*, the Mollen Report establishes that the misconduct underlying Buari's case was sufficiently widespread to support an inference of deliberate indifference. "An entire section of the Report is devoted to 'Perjury and Falsifying Documents,' which is described as 'a serious problem facing the Department,'" and describes testimonial and documentary perjury "as probably the most common form of police corruption facing the criminal justice system today.... " *Id.* at 479 (quoting Mollen Report at 36). Indeed, the Mollen Report is even stronger in Plaintiff's case, because it also contains an entire section on "Cops Protecting and Assisting Narcotics Traffickers," which describes police practices of making unlawful, mutually beneficial deals with drug dealers -- precisely the type of misconduct alleged between Defendants and Mr. Robinson. Accordingly, the Court should find that the Monell Report properly supports Plaintiff's *Monell* claim and deny Defendants' motion to dismiss.

Defendants reliance on the number of the number of felony and misdemeanor arrests in 2014 to suggest an "absence of a pattern of misconduct" (Def. Mem. at 24-25) is entirely spurious. Defendants fail to explain how the number of arrests in 2014 have any bearing on the BCDAO's policy of deliberate indifference in the early-to-mid 1990s. Furthermore, there is no requirement that a complaint plead any particular number of specific examples of prosecutorial misconduct to support a claim of deliberate indifference for *Monell* purposes. In *Babi-Ali v. City of New York*, the court upheld a *Monell* claim where plaintiff cited just nine *Brady* violations over several years. *See* 979 F. Supp. 268, 274 (S.D.N.Y. 1997). In *Fiacco v. City of Rensselaer*, testimony about five prior police incidents over five years, with additional evidence of lack of discipline and police department indifference, was sufficient to uphold a finding of municipal liability. *See* 783 F.2d 319 (2d Cir. 1986).  Even a single instance of deliberate indifference may be sufficient to provide a basis for municipal liability. *See Amnesty Am. v. Town of Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (single "egregious" incident enough); *Disorbo v. Hoy*, 74 F. App'x 101, 103-104 (2d Cir. 2003) (unpublished opinion) (single incident). This Court should, therefore, find that Plaintiff's allegations of the BCDAO's deliberate indifference is more than sufficient at this stage.

Defendants' argument that cases cited by Plaintiff in Exhibit A to his Am. Comp. to support his allegations of the BCDAO's deliberate indifference is entirely conclusory and should be disregarded. The case summaries in Plaintiff's Exhibit A show intentional misconduct by Bronx County District Attorneys that is comparable to the misconduct that caused Plaintiff's injuries, such as withholding exculpatory evidence, (Am. Comp., Exh. A at Nos. 1, 2, 6, 9-16, 18, 20-23) knowingly putting false evidence before a court, (*id.* at nos. 3, 17), failing to disclose deals made with prosecution witnesses, (*id.* at nos. 5, 7, 8, 16).

Defendants argue that Plaintiff cannot rely on the law review article attached to the Am.

Comp. as Exhibit B because the article is hearsay (Def. Mem. at 25). However, courts may consider hearsay alleged in a complaint. *Boncinimo v. N.Y. Unified Court Sys.*, No. 17 Civ. 6760 (VSB), 2018 U.S. Dist. LEXIS 82024, at *30-31 (S.D.N.Y. May 15, 2018). Regardless, Defendants' argument fails because Exhibit B to the Am. Comp. is not being offered for the truth of the matters asserted therein. The law review article is evidence that the BCDAO had notice of allegations that its prosecutors were engaging in misconduct and made no attempt to investigate those allegations or forestall further incidents. The Court can and should consider such evidence of deliberate indifference. *See Delrosario v. City of New York*, No. 07 Civ. 2027 (RJS), 2010 U.S. Dist. LEXIS 20923, at *18 n. 5 (S.D.N.Y. Mar. 4, 2010) (citing *Fiacco v. City of Rensselaer*, 783 F.2d 319, 327-28 (2d Cir. 1986).

### C.    Plaintiff Plausibly Alleges a Failure to Train

Without questioning whether Plaintiff has sufficiently alleged a pattern of misconduct, Defendants claim that Plaintiff has failed to allege a failure to train by the BCDAO because he has not alleged a "specific defect" in their training program. Def. Mem. at 25-26. Defendants are wrong. Plaintiff alleges the BCDAO failed to adequately train its employees on the duty not to initiate a criminal prosecution that is not based on probable cause; the duty not to create or to otherwise use false, misleading or unreliable evidence, testimony, statements or arguments during criminal proceedings, the obligation to correct false, inaccurate, incomplete or misleading evidence, testimony, statements and argument whenever such misconduct is discovered to have occurred, and the continuing obligation to timely and fully disclose *Brady* and *Giglio* materials. Am. Comp. ¶ 326. These allegations allege defects in the BCDAO's training program with sufficient specificity. *See Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992) (allegation of failure to train ADA's on fulfilling *Brady* obligations could constitute deliberate indifference

26

sufficient to give rise to municipal liability).

## VII.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity "shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kerman v. City of New York*, 374 F.3d 93, 108 (2d Cir. 2004). A public official is not entitled to qualified immunity "when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (citation and quotation marks omitted).

Here, Plaintiff has sufficiently alleged that Defendants fabricated the probable cause in violation of his constitutional rights. *See Ying Li*, 246 F. Supp. 3d at 641; *Baily v. City of New York*, 79 F. Supp. 3d 424, 458 (E.D.N.Y. 2015) ("No defendant officer is entitled to qualified immunity when alleged fabrication of evidence is key to the case"). Because the Detective Defendants fabricated evidence with the knowledge that it would be used to initiate a prosecution against Plaintiff, they cannot claim entitlement to qualified immunity because the decision to prosecute rested with the BCDAO. *See Ricciuti*, 124 F.3d at 130-31; *Manganiello*, 612 F.3d at 163.

## VIII.   PLAINTIFF'S CONSTITUTIONAL STATE LAW CLAIMS ARE VIABLE[4]

Defendants argue that Plaintiff's state constitutional claims should be dismissed as duplicative of his federal constitutional claims (Def. Mem. at 28). Defendants' argument is premature. Depending on the Court's determination of this motion, § 1983 may not provide an adequate alternative remedy against Defendants because § 1983 may not authorize respondeat-

---

[4] Plaintiff hereby withdraws his claims for intentional and negligent infliction of emotional distress.

superior liability. "Indeed, the weight of case law in this circuit supports the conclusion that § 1983 is not an adequate alternative remedy for state-constitutional claims that rely on a theory of respondeat superior." *Abdulgalil Kaid Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018) (collecting cases). Here, Plaintiff asserts malicious prosecution, fair trial, and conspiracy claims against defendants under the New York State constitution. *See* Am. Comp. at ¶¶ 359-363. Because § 1983 does not provide an alternative remedy for these claims against the City, the motion to dismiss Plaintiff's New York State constitutional claims should be denied.

## CONCLUSION

For the foregoing reasons, and based on the pleadings filed in this case, the Court should deny Defendants' motion to dismiss. Should the Court find any deficiencies in Plaintiff's opposition to this motion, Plaintiff respectfully requests the opportunity to amend his first Am. Comp. *See Romani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("when a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint") (internal quotation and citation omitted).

Dated:      New York, New York
            February 10, 2020

                                    /s/Marc A. Cannan
                                    Marc A. Cannan (MC 0513)
                                    BELDOCK LEVINE & HOFFMAN LLP
                                    99 Park Avenue, 26th Floor
                                    New York, New York 10016
                                    (212) 490-0400

                                    /s/Oscar Michelen
                                    Oscar Michelen (OM 5199)
                                    CUOMO LLC
                                    200 Old Country Road
                                    Mineola, New York 11501
                                    (516) 741-3222

                                    *Attorneys for Plaintiff Calvin Buari*

28